IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE WEBB, on behalf of plaintiff and a class,<br>   Plaintiff,<br>v.<br>MIDLAND CREDIT MANAGEMENT, INC., et al.,<br>   Defendants. | Case No. 11-cv-5111<br><br>Judge Joan H. Lefkow<br>Magistrate Judge Martin C. Ashman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
AMENDED MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS PENDING THE COMPLETION OF ARBITRATION**

Defendants MIDLAND CREDIT MANAGEMENT, INC. (MCM), MIDLAND FUNDING LLC (Midland LLC) and ENCORE CAPITAL GROUP, INC. (Encore) (collectively defendants), by their attorneys David M. Schultz and Clifford E. Yuknis of Hinshaw & Culbertson LLP respectfully submit this Memorandum of Law in Support of Their Amended Motion to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration ("Amended Motion").

### I. INTRODUCTION

In its recent decision addressing arbitration, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011), the United States Supreme Court confirmed the strong policy favoring enforcement of private agreements to arbitrate disputes as reflected in the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"). When plaintiff Bonnie Webb (Webb) opened and used a credit card account with Midland LLC's predecessor-in-interest, Citibank (South Dakota) N.A. (Citibank), she agreed to a broad arbitration provision whereby any claims relating to the account against Citibank or those claiming through it, its successors or assignees would be resolved through binding arbitration (Arbitration Agreement). Midland LLC purchased Webb's Citibank account after it was charged off, and Midland LLC stands in Citibank's shoes under the Arbitration Agreement.

Webb cannot oppose the Amended Motion unless somehow she can claim that (1) she did not have a Citibank credit card account, or (2) she did not have terms and conditions for this account, or (3) somehow those terms and conditions did not include arbitration. Webb cannot in good faith make such assertions under oath or otherwise. Webb thus has no good faith basis to oppose the Amended Motion without her affirmatively swearing to one of these grounds.

Webb's claims asserted in this action are subject to the Arbitration Agreement, and the Court should grant defendants' Amended Motion. This Court should also stay this action pending the resolution of the arbitration proceedings.

## II. STATEMENT OF FACTS

### A. The Claims Asserted in this Action

On July 28, 2011, Webb filed this action against defendants, alleging that defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, in connection with their attempt to collect a debt from her. (Compl. at ¶¶ 41-48). Webb incurred certain financial obligations on a consumer credit card account (Account) with Citibank (*Id.* at ¶ 31, Exhibit A thereto; Affidavit of Custodian of Records Lana Handy attached hereto as Exhibit 1 at ¶¶ 2, 5-6). Citibank sold and assigned the Account to Sherman Originator III LLC (Exhibit 1 Handy Aff't at ¶¶ 2, 8). Following a series of sales and assignments by and between related entities, Sherman Acquisition, LLC acquired the Account and sold the Account to Midland LLC (Declaration of Patrick Minford, Senior Manager, Business Development Process for MCM, attached hereto as Exhibit 2 at ¶¶ 5, 8-12, Exhibits A, C, D, E attached thereto).

On or about September 21, 2010, MCM sent Webb a pre-legal notification. (Compl. ¶ 23, Exhibit A). This notification states that the original creditor was Citibank and that the current balance was $2,427.05. On or about February 17, 2011, Midland LLC filed suit in the Circuit Court of Cook County, Illinois, against Webb to collect $2,203.16. (Compl. ¶¶ 36, 37). Webb alleges that it "is the policy and practice of defendants to send correspondence such as Exhibit A [to Webb's

complaint] threatening legal action to collect amounts greater than that which defendants actually intend to seek when they do take legal action." (*Id.* at ¶ 41). The notification allegedly inflates the amount of the claimed debt "and then offers to negotiate from that inflated amount." (*Id.* at ¶ 42).

Based upon these allegations, Webb asserts that defendants engaged in deceptive collection practices, in violation of FDCPA, 15 U.S.C §§ 1692e, e(2), e(5), and e(10), and in unfair collection practices, in violation of 15 U.S.C. §§ 1692f and 1692f(1), by sending pre-legal notifications that demand more money than defendants intend to sue for and/or have the right to sue for (*Id.* at ¶ 46).

### B. Webb's Account and the Binding Arbitration Agreement

Webb opened the Account, a Sears-branded credit card, with Citibank (Exhibit 1 Handy Aff't at ¶ 2, Sears MasterCard statement attached thereto; Exhibit 2 Minford Decl. Exhibit F attached thereto). Like any other credit card account, the Account is subject to written terms and conditions reflected in a Card Agreement, which may be amended from time to time. Attached to the Handy Affidavit is an exemplar of the Card Agreement that was sent to Webb after the Account was opened and used by Webb. It provides: "The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located." (Exhibit 1, attached Card Agreement at 15).

The Card Agreement contains an Arbitration Agreement, which provides that either party can elect mandatory binding arbitration on an individual, non-class basis (*Id.*, attached Card Agreement). The Arbitration Agreement states in relevant part:

> **ARBITRATION: PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> **AGREEMENT TO ARBITRATE**:

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered**

**What Claims are subject to arbitration?**

*All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.* All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. *Claims and remedies sought as part of a class action, private attorney general, or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.*

**Whose Claims are subject to arbitration?** *Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.*

\* \* \*

**Broadest Interpretation**. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

\* \* \*

**Who can be a party?** *Claims must be brought in the name of an individual person or entity and must proceed on individual (non-class, non-representative) basis.* The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court.

(Exhibit 1 Handy Aff't, attached Card Agreement at 10-13 (bolding in original, emphasis added)).

The Arbitration Agreement includes specific language (italicized above) that requires that any arbitration may resolve only individual claims. The Arbitration Agreement also includes terms: (i) allowing for the parties to choose between three arbitration firms: The American Arbitration

4

Association, JAMS, and the National Arbitration Forum; and (ii) allowing for the reimbursement and/or advancement of arbitration fees (*Id.*, Card Agreement, attached at 11-12).

Webb does not dispute in her pleadings that she received the Arbitration Agreement and used the Account (Compl. at ¶ 31, Exhibit A). The record shows that there was an unpaid balance of $2,203.16 (Exhibit 1 Handy Aff't at ¶ 6). The record also shows that Citibank sold the Account to Sherman Originator III LLC on or about March 30, 2009 (Exhibit 1 Handy Aff't at ¶¶ 2, 8; Exhibit 2 Minford Decl. at ¶ 12, Exhibit E attached thereto). Thereafter the Account was sold and assigned by and between related entities (Exhibit 2 Minford Decl. at ¶¶ 9-11, Exhibits C and D attached thereto). Sherman Acquisition, LLC acquired the Account and assigned and sold the Account to Midland LLC (Exhibit 2 Minford Decl. at ¶¶ 5, 8, Exhibit A attached thereto). Midland LLC is the successor of Citibank and claiming through it, and it may enforce the terms of the Arbitration Agreement (Exhibit 2 Minford Decl. at ¶¶ 5, 8-12, Exhibits A, C, D and E attached thereto; Exhibit 1 Handy Aff't, attached Card Agreement at 11).

Webb's complaint confirms the applicability of the Arbitration Agreement. It alleges that Encore is a buyer of debt to which Midland LLC takes title and that MCM is a subsidiary of Encore (¶¶6, 8-9, 18-23). Allegedly, most of the debts defendants seek to collect are credit cards originally issued by banks (¶8). Exhibit A to Webb's complaint, a pre-legal notification, reveals the original owner was Citibank, and MCM allegedly sent Exhibit A on behalf of Midland LLC (¶35).

### III.   ARGUMENT

A.   **Webb's Claims are Subject to Binding Arbitration Pursuant to the Arbitration Agreement Governing the Account**

1.   **The Arbitration Agreement in the Card Agreement is Valid and Enforceable**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see*

5

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility*, 131 S.Ct. at 1748 ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . ."). The United States Supreme Court has repeatedly recognized that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).[1]

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)); *AT&T Mobility LLC*, 131 S.Ct. at 1745. The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC*, 131 S.Ct. at 1748 (citations omitted).[2]

In short, the "overarching purpose of the FAA, evidenced in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility*, 131 S.Ct. at 1748. Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." *AT&T Mobility LLC*, 131 S.Ct. at 1748. The FAA "leaves no place for

---

[1] The FAA applies to this dispute because the credit card transactions at issue were made between Webb, who resides in Illinois, and Citibank, a national banking association. (Compl. ¶¶ 3-4; *see* Exhibit 3 hereto). This Court may take judicial notice of public records, such as Exhibit 3. Fed.R.Evid. 201; *520 S. Michigan Ave. Assoc., Ltd. v. Shannon,* 549 F.3d 1119, 1137 n. 14 (7th Cir. 2008). The Arbitration Agreement explicitly states that "[t]his arbitration provision is governed by the [FAA]." (Exhibit 1 Handy Aff't, attached Card Agreement at 11).

[2] *See also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758, 1775 (2010) (citations omitted).

130206601 0926450

the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 130 S.Ct. at 1775 (citations omitted).[3] Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes." *AT&T Mobility*, 131 S.Ct. at 1748-49 (citations omitted) (emphasis in original).[4] Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen*, 130 S.Ct. at 1774-75; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (the FAA ensures the enforceability of private parties to arbitrate).

Under the FAA, arbitration must be compelled where, as here: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See, e.g., Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) *citing Kiefer Spec. Flooring, Inc. v. Taskett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). An arbitration agreement governed by the FAA, like the Arbitration Agreement

---

[3] "Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'" *Volt Info. Scis.*, 130 S.Ct. at 1774 (citations omitted).

[4] In fact, the "point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . . And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id.*, at 1749.

7

here, is presumed to be valid and enforceable. *See Shearson/American Exp., Inc.*, 482 U.S. at 226 (1987); *Mitsubishi Motors Corp. v. Solver Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).[5]

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *Miller v. Flume,* 139 F.3d 1130, 1136 (7th Cir. 1998). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

Applying these rules, numerous courts across the country have upheld and enforced virtually identical arbitration agreements utilized by Citibank. *See, e.g., Lowman v. Citibank (South Dakota), N.A.*, 2006 WL 6108680, at *4 (C.D. Cal. Mar. 26, 2006); *Dumanis v. Citibank (South Dakota), N.A.*, 2007 WL 3253975, at *4 (W.D.N.Y. Nov. 2, 2007); *Eaves-Leanos v. Assurant, Inc.*, 2008 WL 80173, at *9 (W.D. Ky. Jan. 8, 2008); *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1346 (M.D. Ala. Nov. 26, 2003); *Wanda Thompson v. Midland Funding, LLC,* Case No. 1:10 CV 312-SA-SAA, at p. 8 (N.D.Miss. Aug. 3, 2011 (Exhibit 4 hereto); *Bellows v. Midland Credit Mgmt.,* 2011 WL 1691323, at *3 (S.D.Cal. May 4, 2011); *Shelly Shannon v. Midland Funding, LLC,* Case No. 11-CV-239 MMA (NLS), at p. 4 (S.D. Cal. Sept. 12, 2011) (Exhibit 5 hereto); *Champion v. Citibank (South Dakota), N.A.,* No. 6:11CV275 (E.D. Tex. Sept. 2, 2011) at pp. 6, 9 (Exhibit 6 hereto).

In October of this year, a court in the Seventh Circuit enforced a Citifinancial Services, Inc. arbitration agreement involving a loan. *Sorge v. Cavalry Portfolio Serv., Inc.,* 2011 WL 4729703, at *6 (S.D. Ill. October 5, 2011), and Midland LLC and MCM were successful in enforcing an arbitration

---

[5] The FAA preempts any state law "to the extent that [the state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in passing the FAA. *Volt Info. Scis.*, 489 U.S. at 477 (internal quotation marks and citations omitted); *see also AT&T Mobility LLC,* 131 S.Ct. at 1753; *Southland Corp. v. Keating,* 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

8

130206601 0926450

agreement originating with a different creditor. *Olnick v. Fulton, Friedman & Gullace, LLP,* No. W-11-CA-071, at p. 12 (W.D. Texas October 13, 2011) (Exhibit 7 hereto).

### 2. The Arbitration Agreement in the Card Agreement is Valid and Enforceable Under South Dakota Law

The Card Agreement containing the Arbitration Agreement is expressly governed by a South Dakota choice-of-law provision.[6] (Exhibit 1, Handy Aff't, attached Card Agreement at 14.) While the FAA exclusively governs the enforceability of the Arbitration Agreement according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists. *See Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 44 (S.D. 1999) ("the question of whether the parties entered into a valid agreement to arbitrate is a question for the court to determine applying the state contract law principles"); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Consistent with the terms of the Card Agreement here, South Dakota law expressly provides:

> The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days form the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder.

S.D. Codified Laws § 54-11-9; *see* Exhibit 1 Handy Aff't, attached Card Agreement at 1 ("This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account."). Webb had the Account and used it,

---

[6] The South Dakota choice-of-law provision is enforceable because: (i) South Dakota bears a relationship to the parties and the transaction (*i.e.*, Citibank is located in South Dakota); and (ii) South Dakota law is not contrary to any fundamental public policy of Illinois. *Sabo v. Dennis,* 408 Ill.App.3d 619, 628, 948 N.E.2d 121, 129 (1st Dist. 2011) (citation omitted); *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.,* 389 Ill.App.3d 356, 362-63, 906 N.E.2d 630, 636 (1st Dist. 2009); *LaSalle Bank Nat'l Assoc. v. Paramont Prop.,* 588 F.Supp.2d 840, 849 (N.D.Ill. 2008); *see Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 706 (7th Cir. 2004).

130206601 0926450

and therefore assented to the terms of the Card Agreement, including the Arbitration Agreement. (Compl. at ¶ 31, Exhibit A; Exhibit 1 Handy Aff't at ¶¶ 2, 5-6, Sears MasterCard statements attached thereto; Exhibit 2 Minford Decl. at ¶¶ 7, 13, Exhibit F attached thereto). The Account and therefore this dispute are subject to the Arbitration Agreement.

The Arbitration Agreement is valid under South Dakota law. South Dakota, like most states, strongly endorses arbitration as an alternative method to resolving disputes. The South Dakota Supreme Court has instructed that "[i]f there is doubt whether a case should be resolved by traditional judicial means or by arbitration, arbitration will prevail." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration . . .. There is an overriding policy favoring arbitration when a contract provides for it."); *Dinsmore*, 593 N.W.2d at 44-45, 47 (enforcing arbitration agreement in preprinted securities account agreement, even though the parties had expressly agreed to delete an arbitration provision in an earlier agreement and the defendant did not call the arbitration agreement to its customer's attention).

This "overriding" public policy also is confirmed by the South Dakota Attorney General:

> "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W.2d 643 (S.D. 1991), quoting *L.R. Foy Constr. Co. v. Spearfish School Dist.*, 341 N.W.2d 383, 388 (S.D. 1983) (Henderson, J., specially concurring) (citations omitted). South Dakota law, like federal law and the law of most states, encourages private parties to resolve both existing and future disputes by extra-judicial means such as arbitration. "A strong policy exists favoring the arbitration of disputes where the parties have bargained for this procedure." *Hot Springs v. Gunderson's, Inc.*, 322 N.W.2d 8 (S.D. 1982).

*See* South Dakota Attorney General Opinion at 2 (attached hereto as Exhibit 8).

The Arbitration Agreement expressly permits either party to elect mandatory, binding arbitration for any claim, dispute, or controversy between the parties, and defendants properly choose to do so. The Court should grant their Amended Motion.

### 3. Webb's Claims Fall Squarely Within the Scope of the Arbitration Agreement

130206601 0926450

When the Court determines that the parties have a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986); *see Kiefer Specialty Flooring, Inc.*, 174 F.3d at 909 (any doubts concerning the scope of an arbitration clause and the issues arbitrable thereunder should be resolved in favor of arbitration). Where the clause is broad, as here, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech.*, 475 U.S. at 650.[7]

Here, the Arbitration Agreement extends to "[a]ll Claims relating to your account, a prior related account, or our relationship," which "includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . .." (Exhibit 1 Handy Aff't, attached Card Agreement at 10-11). The Arbitration Agreement squarely covers Webb's claims, which challenge the defendants' alleged conduct when attempting to collect the unpaid balance of the Account. These claims clearly "relate to" Webb's Account and are subject to the Arbitration Agreement. *See Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46 (3d Cir. Pa. 1978) (arbitration agreement including phrase "arising out of and about" encompasses matters that "[arise] in the course of and during the on-going relationship . . . created and governed . . ." by the contract containing the arbitration provision).

Webb's claims against defendants are subject to the Arbitration Agreement and the defendants may invoke arbitration. Midland LLC is claiming through Citibank and is Citibank's

---

[7] *Accord Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Elec. Workers, AFL-CIO,* 540 F.3d 640, 646 (7th Cir. 2008) (where the arbitration clause is broad, the presumption of arbitrability is particularly applicable).

130206601 0926450

successor in interest. Citibank sold and assigned the Account to Sherman Originator III LLC, after which the Account was sold and assigned by and between related entities and sold and assigned to Midland LLC ( Exhibit 1 Handy Aff't at ¶¶ 2, 8; Exhibit 2 Minford Decl. at ¶¶ 5, 9-12, Exhibits A, C, D and E attached thereto; *see* Compl. at ¶¶ 6, 8, 20, 28). An assignee or successor can enforce an arbitration clause in a contract. *See In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 789 F.2d 1281, 1282 (7th Cir. 1986) (successor in interest to railroad company had the duty to arbitrate under arbitration clause contained in a contract signed by its predecessor with third parties); *Galbraith v. Resurgent Capital Servs.*, 2006 WL 2990163, at *1 (E.D.Cal. Oct. 19, 2006) (assignee of consumer account entitled to invoke arbitration clause in contract between consumer and assignor); *Wolf v. Langemeier*, 2010 WL 3341823, at *4 (E.D.Cal. Aug. 24, 2010) (staying action pending arbitration and holding that "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed."); *Newport Petroleum, Inc. v. Tug JUSTINE FOSS*, 1997 WL 876955, at *1 (W.D.Wash. Sep. 2, 1997) ("A successor in interest can enforce an arbitration clause in a contract signed by its predecessor.")

In addition, the Arbitration Agreement explicitly states that assignees and successors in interest like Midland LLC can invoke arbitration, providing: "**Whose Claims are subject to arbitration?**" and answers "Not only ours and yours, but also Claims made *by or* **against anyone connected with us** . . . *or claiming through us* . . . such as a . . . **successor, heir, assignee** . . .." (Exhibit 1 Handy Aff't, attached Card Agreement at 11 (bolding in original, italics added)). Thus, Midland LLC which is claiming through Citibank and is a successor in interest, may enforce the Arbitration Agreement.

### B. Webb's Claims Must Proceed to Arbitration on an Individual Basis

As confirmed in *AT&T Mobility*, the Court must enforce the Arbitration Agreement as written, including its clear language requiring arbitration on an individual basis. The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to

12

their terms.'" *AT&T Mobility*, 131 S.Ct. at 1748 (citations omitted). Thus, "the parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Id.*, 131 S.Ct. at 1748-49 (citations omitted); *Stolt-Nielsen*, 130 S.Ct. at 1774 ("Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility*, 131 S.Ct. at 1753; *Howsam v. Dean-Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted). Where the agreement prohibits class-wide arbitration (as here), or even where the agreement is silent on the issue, there can be no class-wide arbitration. *See Candle v. Am. Arbitration Ass'n*, 230 F.3d 920, 921 (7th Cir. 2000); *Iowa Grain Co. v. Brown*, 171 F.3d 504, 510 (7th Cir. 1999); *Thompson v. Illinois Title Loans, Inc.*, 2000 WL 45493, at *4 (N.D.Ill. Jan. 11, 2000).

By opening and using her Account, Webb assented that: "Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis." (Exhibit 1 Handy Aff't, attached Card Agreement at 11). The Arbitration Agreement confers on the arbitrator only the authority to decide individual claims, and not to make any award, or consider any claims, by or relating to any other person. This language unequivocally demonstrates the parties' intent to arbitrate claims only on an individual basis, and "the FAA requires courts to honor parties' expectations." *AT&T Mobility*, 131 S.Ct at 1753 (emphasis added); *Stolt-Nielsen*, 130 S.Ct. at 1776 (the FAA requires that class arbitration may only be ordered when the parties expressly agree to class arbitration).

Furthermore, the FAA preempts state laws that attempt to regulate the terms of, and parties to, arbitration or otherwise challenge the arbitration process based on the terms under which the

13

arbitration will take place. *See AT&T Mobility*, 131 S.Ct. at 1753 (abrogating California law invalidating arbitration agreements that contain a class action waiver because the law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress" in establishing the FAA) (internal quotations and citations omitted); *Volt Info. Scis.*, 489 U.S. at 477; *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

In the short time since *AT&T Mobility* was handed down, courts have confirmed that, under the FAA, state law challenges to arbitration agreements that contain class action waivers are not viable. *See, e.g., Troy v. First Premier Bank*, 2011 WL 4478437, at ** 4-5 (N.D. Ill. Sept. 26, 2011) (arbitration provision with class waiver enforceable); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215-16 (11th Cir. 2011) (class action waiver in arbitration provision of the parties' wireless agreement was enforceable); *Litman v. Cellco P'ship*, 655 F.3d 225, 231-32 (3d. Cir. 2011) (affirming district court's motion to compel arbitration); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (arbitration clause with class waiver enforceable); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712, at **2-3 (N.D.Cal. May 16, 2011) (compelling arbitration of claims for injunctive relief in a class action because *AT&T Mobility* "compels preemption . . . [of] California's exemption of claims for public injunctive relief from arbitration, at least for actions in federal court."); *Zarandi v. Alliance Data Sys. Corp.*, 2011 WL 1827228, at *2 (C.D.Cal. May 9, 2011) (compelling arbitration of class claims because *AT&T Mobility* confirms that "the FAA preempts state law to the extent it prohibits arbitration of a particular type of claim."); *Day v. Persels & Assocs., LLC,* 2011 WL 1770300, at *5 (M.D.Fla. May 9, 2011) (under *AT&T Mobility* arbitration agreement with class action waiver not unconscionable under Florida law); *Bellows v. Midland Credit Mgmt., Inc.*, 2011 WL 1691323, at *3 (S.D.Cal. May 4, 2011) (compelling arbitration in putative class action because *AT&T Mobility* "mak[es] clear the agreement to arbitrate is not substantively unconscionable merely because it includes a class action waiver.").

14

### C. This Action Must Be Stayed

Section 3 of the FAA provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see *AT&T Mobility LLC*, 131 S.Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation in arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'"); *Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) *citing Tice v. Am. Airlines, Inc.*, 288 F.2d 313, 318 (7th Cir. 2002).

### IV. CONCLUSION

For the foregoing reasons, defendants respectfully submit that the Court grant their Amended Motion to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration.

Dated: <u>November 10, 2011</u>

Respectfully submitted,

MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC., Defendants

David M. Schultz
Clifford E. Yuknis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
(312) 704-3000
Fax: (312) 704-3001

By: <u>/s/ Clifford E. Yuknis</u>
    One of Their Attorneys

15