IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE WEBB, on behalf of plaintiff and a class, Plaintiff, | 11-cv-5111 |
| v. | Judge Joan H. Lefkow |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING LLC; and ENCORE CAPITAL GROUP, INC., formerly MCM CAPITAL GROUP, INC., Defendants. | Magistrate Judge Martin C. Ashman |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING THE COMPLETION OF ARBITRATION**

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX

Defendants' motion to compel arbitration and stay proceedings should be denied, because:

(1) Defendants cannot prove an assignment or ownership of the account; and

(2) Defendants cannot demonstrate that they are parties to the arbitration agreement.

In this case, Midland Funding, LLC ("Midland Funding") claimed to own the debt allegedly owed by Plaintiff. Midland Credit Management, Inc. ("MCM") sent a collection letter to Plaintiff on Midland Funding's behalf. Midland Funding then sued Plaintiff for the debt. When Plaintiff appeared and defended the action, Midland Funding dismissed the case.

In fact, neither Midland Funding, nor any of the other Midland Defendants, ever owned Plaintiff's alleged account. It is Defendants' business practice to file lawsuits against alleged debtors, and then dismiss the case if the debtor appears to defend the case. Defendants do this because, if called to testify, their witnesses will be forced to testify that they have no basis for bringing the lawsuits. Because Defendants not own the debt, they have no rights under the arbitration clause for which Defendants seek to enforce.

Defendants claim that the account at issue was assigned five times from Citibank (South Dakota), N.A. ("Citibank") to Sherman Originator III, LLC ("Sherman Originator III") to Sherman Originator, LLC ("Sherman Originator") to LVNV Funding, LLC ("LVNV") to Sherman Acquisition, LLC ("Sherman Acquisition") to Midland Funding. Importantly, Defendants do not claim that a discrete portfolio was transferred as a whole. (Exhibit A, Minford Deposition, 28:1-4)

Redacted Redacted

Defendants purport to rely upon a series of undated and incomplete "Transfer and Assignment" documents which were not prepared simultaneously with the alleged transfers (as evidenced by the use of the past tense in describing the transfer) to compel Plaintiff to arbitrate her

claims. As more fully described below, the alleged "Transfers and Assignments" are not assignments and themselves show breaks in the chain of title for the debt.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On or about Sept. 21, 2010, defendant MCM sent plaintiff a "pre-legal notification" (Exhibit B), demanding payment of $2,427.05 and stating that "we are considering forwarding this account to an attorney with the intent to initiate legal action to satisfy this debt", and "If we don't hear from you or receive payment by 10-21-2010, we may proceed with forwarding this account to an attorney." The "pre-legal notification" is a form document regularly used by defendant MCM. This letter was sent by MCM on behalf of Midland Funding LLC.

On or about Feb. 17, 2011, defendant Midland Funding LLC, which claimed to own the debt, filed suit against plaintiff to collect the alleged debt in the Circuit Court of Cook County. A copy of the complaint is attached as Exhibit C. The complaint sought only $2,203.16.

Attached to the complaint was an "Affidavit of Paula Hansen in Support of Judgment" (Exhibit D) which claimed Midland's "business records pertaining to this account" show that "defendant(s) owed a balance of $2203.16." Plaintiff retained counsel and defended the state court lawsuit. On June 23, 2011, Midland Funding LLC nonsuited the state court lawsuit.

Plaintiff alleges that defendants send correspondence such as Exhibit B threatening legal action to collect amounts greater than that which defendants actually intend to seek or are entitled to seek when they do take legal action, in violation of 15 U.S.C. §1692e and §1692f. The "pre-legal notification" inflates the amount of the claimed debt and then offers to negotiate from the inflated amount.

On October 17, 2011, defendants filed a motion to compel arbitration and stay proceedings pending the completion of arbitration ("First Motion to Compel Arbitration"). [Dkt. No. 28] In their first motion, defendants claimed that Citibank, the original creditor, "sold and assigned the Account to ***Sherman Originator III LLC***" and that "***Sherman Acquisition, LLC*** sold the Account to Midland LLC." (Def. Original Memo., Dkt. No. 29, p. 2) (emphasis added). Sherman Originator III LLC

and Sherman Acquisition, LLC are different entities.

On October 27, 2011, defendants requested leave to amend and/or supplement their motion to compel arbitration. [Dkt. No. 32] On November 10, 2011, Midland filed its amended motion to compel arbitration and stay proceedings pending the completion of arbitration ("Second Motion to Compel Arbitration"). [Dkt. Nos. 34-36] Defendants attached the affidavit of Pat Minford, Senior Manager, Business Development Process for Midland Credit Management, in support of their second motion to compel arbitration. [Dkt. No. 35-2, Exhibit 2]

The affidavit of Pat Minford asserts in conclusory fashion that the Account at issue was first assigned from Citibank (South Dakota) ("Citibank") to Sherman Originator III LLC ("Sherman Originator III") (par. 12), then from Sherman Originator III to Sherman Originator LLC ("Sherman Originator") (par. 11), then from Sherman Originator to LVNV Funding LLC ("LVNV") (par. 10), then from LVNV Funding LLC to Sherman Acquisition, LLC ("Sherman Acquisition") (par. 9), and finally from Sherman Acquisition to Midland Funding LLC ("Midland Funding") (par. 8).

The statements made by Minford in the affidavit are based upon a series of "Transfers and Assignments" which are attached to the affidavit as Exhibits A-E. However, other than the "Transfer and Assignment" from Sherman Acquisition to Midland Funding (Exhibit A to Exhibit 2), the remaining "Transfers and Assignments" for which Minford relies in making these statements are not dated and are phrased in the past tense, referring to supposed transfers and assignments made in the past. None of the "assignments" identifies Plaintiff's account by number or name.

## II. STANDARD OF PROOF

The standard of proof on a motion to compel arbitration is similar to that on a summary judgment motion. "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . courts apply a standard similar to that applicable to a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2nd Cir.2003). This is the rule followed in the Seventh Circuit. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir.2002).

## III. DEFENDANTS ARE NOT A PARTY TO THE ARBITRATION CLAUSE ON WHICH THEY RELY AND CANNOT SHOW THEY ARE ENTITLED TO ENFORCEMENT

If Defendants did not acquire the alleged debt, they cannot rely upon an arbitration clause in an agreement between Plaintiff and the original creditor. The agreement describes the claims covered as follows:

> Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy. (Defendants' Exhibit 1, Cardholder Agreement, p. 11, Dkt. No. 35-1, page 7 of 17)

Plaintiff cannot be required to submit her dispute with Defendants to arbitration unless it is established that she agreed to do so. *AT&T Tech. Inc.* v. *Communication Workers,* 475 U.S. 643, 648 (1986). It is well settled that "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Tech. Inc.* v. *Communication Workers,* 475 U.S. 643, 648 (1986) ("*AT&T*"). The question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *Id.* at 649. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 626 (1985). State law applicable to contracts generally governs whether an agreement to arbitrate exists. 9 U.S.C. ' 2; *Perry v. Thomas,* 482 U.S. 483, 492 n. 9 (1987).

In this case, it is undisputed that no express agreement to arbitrate exists between Plaintiff and Defendants. See Defendants' Exhibit 1, Card Agreement (identifying the creditor as Citibank USA N.A.)(Dkt. No. 29-1, page 7 of 17). The arbitration provision specifically states that: " Either ***you*** <u>or</u> ***we*** may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims")." *Id.*, at Page 13 of 17(emphasis added). For the purposes of this paragraph, "[t]he words *we, us,* and *our* mean Citibank USA, N.A., the issuer of your account" and "[t]he words *you, your, yours*, and *accountholder* mean all persons responsible for complying with this Agreement, including the person, and any co-applicant, who

applied to open the account and the person to whom we address account statements." *Id.* at 7 of 17(emphasis in original).

While the contract does provide that the arbitration clause applies to claims of "Not only our and yours, but also Claims made by or against anyone with us or you or claiming through us or you such as a co-applicant or authorized use of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy," that requires Defendants to prove ownership. *See Starr v. Hameroff Law Firm, PC*,2007 U.S. Dist. LEXIS 80923(D. Ariz. 2007) (report and recommendation), *accepted and adopted* by 2008 U.S. Dist. LEXIS 26124 (D. Ariz. 2008); *Bontempo v. Wolpoff & Abramson, LLP*, No. 06-745, 2006 U.S. Dist. LEXIS 78160 (W.D. Pa., September 20, 2006), adopted by 2006 U.S. Dist. LEXIS 81012 (W.D.Pa., Oct. 23, 2006) (denying motion to compel arbitration brought by FDCPA "debt collector" on ground debt collectors were not covered); *Karnette v. Wolpoff & Abramson, LLP*, 444 F. Supp. 2d 640, 644-46 (E.D. Va. 2006) (same); *Cohen v. Wolpoff & Abramson, LLP*, 08-1084 (SRC), 2008 U.S. Dist. LEXIS 77052 (D.N.J., October 2, 2008); *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352 (2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp.2d 800, 808-810 (N.D. Ill. 2008) (arbitration clause between "you" (the consumer, and "us" (AT &T) could not be enforced by a debt collector; and *Nazr v. Wolpoff & Abramson*, LLP, 2007 WL 2875377 (D. Kan. 2007) (arbitration clause in credit card agreement apply to "you" and "us" could not be enforced by a debt collector that was not a party to the agreement).

There is no basis for this Court to require that this dispute be submitted to arbitration because Defendants failed to show ownership of the account. Defendants have no basis to even be collecting the debt against Plaintiff, much less enforcing an arbitration clause in an agreement between Plaintiff and Citibank.

## IV. DEFENDANTS CANNOT PROVE ASSIGNMENT OR OWNERSHIP OF THE DEBT

The affidavit of Pat Minford asserts that the Account at issue was first assigned from (A) Citibank to Sherman Originator III (par. 12), (B) then from Sherman Originator III to Sherman

Originator (par. 11),(C) then from Sherman Originator to LVNV Funding (par. 10), (D) then from LVNV Funding to Sherman Acquisition (par. 9), and (E) finally from Sherman Acquisition to Midland Funding (par. 8). However, there is no basis for his assertion that Plaintiff's debt is among the debts included in (B)-(E). The "Transfer and Assignments" relied upon, show a clear break in the chain of title.

The "Declaration of Account Transfer and Ownership History" from Sherman Originator III to Sherman Originator and then to LVNV, which is undated and phrased in the past tense, states:

> Sherman Originator III LLC ("SOLLC III"), ***without recourse, to the extent permitted by applicable law, transferred, sold, assigned, conveyed, granted and delivered*** to Sherman Originator LL ("SOLLC") all of its right, title and interest in and to the receivables and other assets (the "Assets") identified on the Receivables File dated March 24, 2009 delivered by Citibank (South Dakota), N.A. on March 30, 2009 for purchase by SOLLC on March 30, 2009. The transfer of the Assets included electronically stored business records.
>
> SOLLC, subsequent to the above mentioned transfer, ***transferred, sold, assigned, conveyed granted and delivered*** to LVNV Funding LLC ("LVNV"), the above mentioned Assets. The transfer of the Assets included electronically stored business records. (Exhibit D, to Pat Minford's Affidavit, Dkt. No.35-2)(Emphasis added).

[redacted] Without that file, there is no basis for asserting that Plaintiff's debt was transferred.

The "Transfer and Assignment" from LVNV to Sherman Acquisition, which is also undated and phased in the past tense, states:

> LVNV Funding LLC ("LVNV"), ***without recourse, to the extent permitted by applicable law, transferred, sold, assigned, conveyed, granted and delivered*** to Sherman Acquisition, LLC ("SALLC") all of its right, title and interest in and to the receivables and other assets (the "Assets") identified ***on the Receivables File dated <u>June 10, 2010</u>***. The transfer and Assets included electronically stored business records. (Exhibit C, to Pat Minford's Affidavit, Dkt. No.35-2)(Emphasis added)

[redacted]

The "Transfer and Assignment" from Sherman Acquisition to Midland Funding states that:

> [O]n June 10th, 2010, Sherman Acquisition, LLC ("Seller"), owner of accounts previously serviced by Citibank, N.A., and its servicing affiliates (collectively the

> "Originating Creditor") for value received, transfers, sells assigns, conveys, grants and delivers to Midland Funding LLC ("Buyer"), all rights, title and interest in and to (I) Seller's unsecured consumer credit card accounts which are described on certain electronic data file containing the business records of Seller named "***20100608***_FinalChgOff_Excell_Sears Mastercard_April10_151826_197512-2.xl (the "Computer File") incorporated herein by reference in its entirety and furnished by Seller to Buyer in connection herewith...
>
> Each Account on the Account Schedule is more specifically described and identified on the Computer Filed named "20100608_FinalChgOff_Excel_Sears Mastercard_April10)151826_197512-2.xlsx", which Computer File is incorporated herein in its entirety by reference, which was produced by the Originating Creditor on behalf of Seller and the technician, whose affidavit is attached hereto, from Seller's Computer data system (the "Data System") on ***June 8th, 2010*** in the form of the Data Map attached hereto. (Exhibit A, to Pat Minford's Affidavit, Dkt. No.35-2)(Emphasis added)

A page of "account information" is provided as an Exhibit, but it contains no internal indicia that it is part of "20100608_FinalChgOff_Excel_Sears Mastercard_April10)151826_197512-2.xlsx" as required by Illinois law. *Unifund v. Shah*, 407 Ill. App. 3d 737, 946 N.E.2d 858 (1st Dist. Feb. 25, 2011).

All that one can conclude from these documents is that (1) Sherman Originator III transferred to Sherman Originator unknown accounts on a data file dated March 24, 2009; (2) Sherman Originator transferred to LVNV, on some unknown date unknown accounts on a data file dated March 24, 2009; (3) LVNV transferred to Sherman Acquisition unknown accounts on a data file dated ***June 10, 2010***; and (4) Sherman Acquisition transferred to Midland Funding a portfolio of accounts on a data file dated ***June 8, 2010***, a date which ***predates*** its alleged assignors' data file, which Midland claims included Plaintiff's account, but as to which the documentation required by Illinois law is absent.

As another court presented with similar documentation held in *Nyankojo v. North Star Capital Acquisition*, 298 Ga.App. 6; 679 S.E.2d 57, 61 (1009):

> Through competent and admissible evidence. North Star showed nothing more than that, under a revolving charge agreement, Nyankojo was indebted in the amount of $2,621.83 on an account to Leather World identified by number; that Leather World assigned an unidentified revolving charge agreement to an unidentified entity; and that Wells Fargo assigned to North Star an unidentified account on which Nyankojo owed $1,132.62. This evidence, event together with the reasonable inferences from it, was insufficient to establish all essential elements of North Star's case.

Similarly in *Norfolk Financial Corp. v. Mazard*, 2009 Mass. App. Div. 255, 2009 Mass. App. Div. LEXIS 54, *10-11 (Nov. 12, 2009), the court held:

> Nor, finally, do the business records attached to the Medeiros affidavit establish Norfolk's status as the valid assignee of Mazard's alleged Household account. By the ten bills of sale attached to the affidavit, Norfolk showed only that, between April, 2001 and March, 2005, multiple accounts were assigned from Bank of America, N.A. ("BOA") to Worldwide Asset Purchasing, LLC ("Worldwide"), from Worldwide to Seller and Risk Management Alternatives Portfolio Services, LLC ("SRMAPS"), from SRMAPS to North Star Capital Acquisition, LLC ("North Star"), from North Star to Global Acceptance Credit Corporation ("Global"), and finally, in March, 2005, from Global to Norfolk. Norfolk failed, however, to present any evidence of an assignment of Mazard's account from Household to BOA. Further, although the attached exhibits were admissible under the business records exception to the hearsay rule, see G.L.c. 233, § 78; Beal Bank, SSB v. Eurich, 444 Mass. 813, 817, 831 N.E.2d 909 (2005), not one makes any reference to Mazard's Household account. Mazard's account is not identified in any of the ten bills of sale. And although each bill of sale states that the accounts being assigned are listed in respectively attached schedules, none of those schedules were provided by Norfolk in support of its motion.

An "assignment" requires "the transfer of a designated or identified right, claim, or fund." *Associated Metals & Minerals Corp. v. Isletmeleri*, 6 Ill. App. 2d 548, 553, 128 N.E.2d 595, 597 (1st Dist. 1955). "Assignments" which do not identify what is transferred by name or account number are not "assignments." *Unifund CCR Partners v. Cavender,* No. 2007-CC-3040, 14 Fla. L. Weekling Supp. 975b (Orange Cty. July 20, 2007) (Exhibit E); *Hutto v. CACV of Colorado, LLC*, 308 Ga. App. 469, 707 S.E.2d 872 (2011); *Wirth v. CACH, LLC*, 300 Ga. App. 488, 490-491, 685 S.E.2d 433, 435-436 (2009); *Cuda & Associates, LLC v. Lumpkin,* NNHCV095031901, 2011 Conn. Super. LEXIS 3025, *9-10 (November 29, 2011); *Citibank (South Dakota), N.A. v. Martin*, 11Misc. 3d 219; 807 N.Y.S.2d 284 (Civ. Ct. 2005); *Palisades Collection LLC v. Haque*, 2006 N.Y. Misc. LEXIS 4036; 235 N.Y.L.J. 71 (Civ. Ct. Queens Co., April 13, 2006); *Palisades Collection v. Gonzalez*, 10 Misc. 3d 1058A; 809 N.Y.S.2d 482 (N.Y. County Civ. Ct. 2005); *Rushmore Recoveries X, LLC v. Skolnick*, 15 Misc. 3d 1139A; 841 N.Y.S.2d 823 (Nassau Co. Dist. Ct. 2007); *MBNA America Bank NA v. Nelson*, 15 Misc. 3d 1148A;841 N.Y.S.2d 826 (N.Y. Civ. Ct. May 24, 2007); *Colorado Capital Investments, Inc. v. Villar*, 5894/2005, 2009 N.Y. Misc. LEXIS 2693; 241 N.Y.L.J. 116 (N.Y. Civ. Ct., June 4, 2009); *National Check Bureau v. Ruth*, No. 24241, 2009 Ohio

4171, 2009 Ohio App. LEXIS 3506 (Ct. App., 9th Dist., Aug. 19, 2009); *Unifund CCR Partners v. Hemm*, 08-CA_36, 2009 Ohio 3522, 2009 Ohio App. LEXIS 3009 (Ohio App., 2nd Dist., July 17, 2009); *Unifund CCR Partners v. Laco*, No. 05-08-01575-CV, 2009 Tex. App. LEXIS 9642, *12 (Tex. App. Dec. 17, 2009); *RAB Performance Recoveries LLC v. Scorsonelli*, 3442/1008, 2009 N.Y. Misc. LEXIS 2512; 242 N.Y.L.J. 16 (Richmond Co. Sup. Ct., June 25, 2009; *DNA Equity Inc. v. Lavalle*, 26 Misc. 3d 1228A, 907 N.Y.S.2d 436 (Dist. Ct. Feb. 22, 2010).

## V. DEFENDANTS' AFFIANTS HAVE NO PERSONAL KNOWLEDGE OF AN ASSIGNMENT OF THE WEBB DEBT

Minford submitted an affidavit in which he claims that "my own personal knowledge" or "my review of the business records of Midland Funding and Midland Credit"[1] (¶2) showed the transfer of Plaintiff's account [redacted] *Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979 (N.D. Ill., 2008) ("When an affiant...swears under oath that he has personal knowledge of the facts he cites, that tells a Court that he has firsthand information, not information collected by others behind the curtain and then communicated by the declarant"). The transfer and assignments upon which Minford relied in drafting his affidavit were incomplete, and the affiant did not attach or contain any business records showing what was transferred at each step.

---

[1] The witness' recitation of the alleged content of a business record is hearsay, not the best evidence, and indamissible. The record is the evidence and has to be provided. *Grant v. Forgash*, 1995 Ohio App. LEXIS 5900, *13 (Ohio App. 1995)("There is no hearsay exception...that allows a witness to give hearsay testimony of the content of business records based only upon a review of the records."); accord, *Wahad v. Federal Bureau of Investigation*, 179 F.R.D. 429, 438 (S.D.N.Y. 1998); *Topps v. Unicorn Ins. Co.*, 271 Ill. App. 3d 111, 116, 648 N.E.2d 214 (1st Dist. 1995) ("under the business record exception to the hearsay rule, only the business record itself is admissible into evidence rather than the testimony of the witness who makes reference to the record"); *Northern Illinois Gas Co v. Vincent DiVito Constr.*, 214 Ill. App. 3d 203, 215, 573 N.E.2d 243, 252 (2nd Dist. 1991) ("The business records exception to the hearsay rule...makes it apparent that it is only the business record itself which is admissible, and not the testimony of a witness who makes reference to the record"); *Yee v. Ventus Capital Servs.*, C 05-03097 RS, 2006 U.S. Dist. LEXIS 32180 *10 (N.D. Cal. May 12, 2006) ("[T]he business records exception to the hearsay rule makes the notes themselves admissible, [but[ the custodian's attempt to explain and interpret what those notes mean is not competent evidence.")

Redacted Redacted

With respect to Exhibit E, Pat Minford testified the following:

Q. Other than what you see in the bill of sale, do you have any knowledge of who created this file?

***

A. I don't know.

(Exhibit A, Minford Deposition, 14:23-15:3)

When asked about Exhibit C to his declaration, relating to the transfer from LVNV to Sherman Acquisition, Minford testified as follows:

Q. Is that the same file as the 20100608 final charge off Excel Sears MasterCard file that you referred to previously?

A. I don't know.

(Exhibit A, Minford Deposition, 23:24-24:6)

In reference to Exhibit D to his affidavit, related to the subsequent transfers between Sherman Originator III and Sherman Originator, and then from Sherman Originator to LVNV,

Redacted Redacted

*[Page content redacted]*

Redacted Redacted

Similarly, Paula Hansen, whose affidavit Defendants relied upon in their first motion to compel arbitration and who provided the affidavit in support of the collection proceeding which formed the basis for this action, also testified that

Redacted Redacted

Furthermore, a document purporting to "assign" something "without recourse, to the extent permitted by applicable law," as the documents at issue here do, is utterly worthless. It is not a representation that anything actually is, or in this case has been, transferred. *Worldwide Asset Purchasing, LLC v. Rent-A-Center East, Inc.*, 290 S.W.3d 554 (Tex. Ct. App. 2009) (Debt buyers Worldwide, Atlantic Credit and NCO sued creditor Rent-A-Center after paying $5 million for charged-off debts and finding that "an overwhelmingly high percentage of the information on the asset schedule was inaccurate or incomplete, including customer information, references, social security numbers, inventory descriptions, inventory status, account and sales balances, as well as whether the rental agreements were valid." The court held that because the creditor had sold the

debts "as is," they had no recourse.)

## VI. THERE IS A SERIOUS PROBLEM WITH "DEBT BUYERS" ATTEMPTING TO COLLECT DEBTS THAT THEY DO NOT OWN

As indicated by the decisions condemning the sort of "assignments" relied upon here, the possibility that a debt buyer is attempting to enforce a debt it does not own is very real. *Chase Bank USA, N.A. v. Cardello*, 2010 NY Slip Op. 20090, 27 Misc. 3d 791, 896 N.Y.S.2d 856, 857, 2010 N.Y. Misc. LEXIS 513, 243 N.Y.L.J. 48 (Richmond Co. Civ. Ct. 2010) ("on a regular basis this court encounters defendants being sued on the same debt by more than one creditor alleging they are the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and finding themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation.) An article that appeared in the trade press in early 2007 stated:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent. . . . .

Corinna C. Petry, Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises, *Collections & Credit Risk*, March 2007, pg. 24 Vol. 12 No. 3.

Thousands of debts that the seller did not own have been sold. D. Edelman, *Collection Defense, 2011 Quickguide*, Ill. Inst. Cont. Legal Educ. 2011, at § 1.3, p. 8) (Exhibit G). There are also numerous reported cases in which debtors have been subjected to litigation because they "settled" with or paid one party and then another party claimed to own the same debt. P. Holland, *The One Hundred Billion Dollar Problem With Small Claims Court: Robo-Signing and Lack of Proof of Debt Buyer Cases*, No. 2011-32University of Maryland, Journal of Business & Technology Law, at 270-272 (July 25, 2011)(Exhibit H). Finally, because information relating to debts is

provided for purposes of evaluation, the fact that a debt buyer has account information does not mean that it owns the debt. *Chase Bank USA, N.A. v. Unifund Portfolio A, LLC*, Case No. 09 Civ. 9795, 2010 U.S. Dist. LEXIS 94881 (S.D. N.Y., Sept. 10, 2010).

## VII. CONCLUSION

Because Defendants cannot show a chain of valid assignments by which they could enforce an agreement between Plaintiff and the original creditor, Defendants cannot compel arbitration of Plaintiff's claims.

Respectfully submitted,

s/Cassandra P. Miller
Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
   & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

I, Cassandra P. Miller, hereby certify that on January 24, 2012, a copy of the foregoing was filed electronically using the Court's CM/ECF system, a copy of which was also sent via US mail to the following:

Clifford E. Yuknis
David M. Schultz
Hinshaw & Culbertson, LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081

s/Cassandra P. Miller
Cassandra P. Miller