IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE WEBB, on behalf of plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. 11-cv-5111 |
| MIDLAND CREDIT MANAGEMENT, INC., et al., | ) ) ) | Judge Joan H. Lefkow Magistrate Judge Martin C. Ashman |
| Defendants. | ) ) ) | |

*REDACTED* REPLY IN SUPPORT OF
AMENDED MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS PENDING THE COMPLETION OF ARBITRATION

Defendants MIDLAND CREDIT MANAGEMENT, INC. (MCM), MIDLAND

FUNDING LLC (Midland LLC) and ENCORE CAPITAL GROUP, INC. (Encore) (collectively

defendants), by their attorneys respectfully submit this Reply in Support of their Amended Motion

to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration.

## I.    INTRODUCTION

Plaintiff Bonnie Webb's (Webb) Response (Resp.) does not dispute that Webb opened and

used a credit card account with Citibank (South Dakota) N.A. (Citibank). Nor does the Response

contest that her Account was subject to written terms and conditions, which included a broad

arbitration provision whereby any claims relating to the account against Citibank or those claiming

through it, its successors or assignees would be resolved through binding arbitration. Webb does

not dispute in her Response or in her complaint that: (1) she received the terms and conditions; (2)

she used the Account, thereby assenting to the terms and conditions, including the broad arbitration

provision; and (3) the Arbitration Agreement covers her claims. Nor does Webb claim someone

else owns the Account or that anyone tried to collect on it. Against these concessions and the

strong federal policy favoring arbitration, Webb tries to show that Defendant Midland Funding LLC (Midland Funding) cannot invoke the Arbitration Agreement.

Midland Funding owns Webb's debt pursuant to sale and assignment. The "beginning" of the claim of title is the Citibank affidavit of Lana Handy, which identifies Webb's Account XXXX-XXXX-XXXX-7406 ("Account"), and its sale and assignment to Sherman Originator III LLC (*See* defendants' initial memorandum (Doc. #35 Ex. 1 thereto). The "end" of the chain of title is attested to in Patrick Minford's Declaration showing Midland Funding's purchase of Webb's Account XXXX-XXXX-XXXX-7406 (*See* defendants' initial memorandum Ex. 2 thereto). In between these two points were assignments by and between related entities, with Midland Funding ending up with Webb's Account and the debt arising therefrom. The transfers from Citibank to, ultimately, Midland Funding were "properly document[ed]" (Resp. 1). There were no breaks "in the chain of title." (Resp. 2). The chain of title shows, as defendants correctly said in their initial motion, the assignment of the Account from Citibank to Sherman Originator III LLC, and later a different entity, Sherman Acquisition, LLC, selling the Account to Midland Funding (Resp. 2-3). Webb ignores the extensive testimony and documentation and case law, and concludes by asserting there are problems with debt buyers generally.

## II.   ARGUMENT

### A.   WEBB FAILS IN HER BURDEN OF PROOF.

Webb does not raise a "triable issue of fact concerning the existence of the agreement" to arbitrate. *Tinder v Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Rather, she tries but fails to create an issue as to Midland Funding's standing as assignee of that undisputed agreement. Webb must demonstrate a genuine issue of material fact warranting a trial under 9 U.S.C. § 4. *Id*

2

> . . . a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial [citation omitted].

*Id.* This Webb fails to do.

## B. MIDLAND FUNDING, AS A PARTY CLAIMING THROUGH CITIBANK AND ITS ASSIGNEE, MAY INVOKE THE ARBITRATION CLAUSE.

Webb concedes the language of the Arbitration Agreement covers "claims" against Citibank and entities claiming through it, "such as . . . successor, . . . assignee" (Resp. 4-5). Contrary to Webb's argument, Midland has proven assignment and ownership, and can invoke arbitration.

First, Midland has provided the Affidavit of Citicorp. Credit Services, Inc. (USA)'s employee Lana Handy ("Handy Aff't") (Ex. 1 to defendants' initial memorandum). Handy attested to the Citibank Agreement with Webb, her knowledge of Webb's particular Account No. XXXX-XXXX-XXXX-7406 and the sale of Webb's Account to Sherman Originator III (*see* Handy Aff't, top of p. 1, ¶¶ 2, 4-8). Webb does not contest any facts in Handy's Affidavit.

Second, Minford's Declaration ("Minford Decl.") attests, with foundation, as to Midland Funding's purchase of Webb's account, explaining Exhibit B of his Declaration. Exhibit B specifies various data of Webb's particular Account No. XXXX-XXXX-XXXX-7406 (*see* Minford Decl. ¶¶ 5-6). Midland Funding also submitted, with foundation, assignment and transfer documents demonstrating the full chain of title from Citibank to Midland Funding (Minford Decl. Exs. A, C-E).

The intermediary assignment documents (Minford Decl. Exs. C, D, E) do not refer to Webb's account by name. Nor does Midland have certain files referred to in the assignment documents (Resp. 6). These facts do not advance Webb's position. Webb's specific Account No. XXXX-XXXX-XXXX-7406 is identified as sold in the beginning of the chain of title (Handy Aff't, top of p. 1, ¶¶ 2-8), and at the end of the chain of title being owned by Midland Funding (Minford Decl. ¶¶ 5-8, Exs. A, B). Where is the proof by Webb that her Account "went somewhere else"

130269139v1 0926450

between these two documented events? Webb is arguing – without logic - about two schedules not being attached to executed documents bracketed by assignments specifically identifying Webb's Account XXXX-XXXX-XXXX-7406.

Webb's arguments fall when basic law is applied. General contract law governs the making of assignments. *Stilwell v Am Gen Life Ins. Co.*, 555 F.3d 572, 577 (7th Cir. 2009). An assignment is a contract between the assignor and assignee and is interpreted or construed according to the rules of contract interpretation. *Amalgamated Transit Worker's Union v Pace Suburban Bus Div of Reg'l Transp. Auth.*, 407 Ill.App.3d 55, 60, 943 N.E.2d 36, 41 (1st Dist. 2011). It is a fundamental principle of contract law that an instrument may incorporate another instrument by reference as long as the reference demonstrates an intention to incorporate the document and make it part of the contract. *Provident Fed. Sav. & Loan Ass'n v Realty Centre, Ltd.*, 97 Ill.2d 187, 192-93, 454 N.E.2d 249, 251 (1983); *Arneson v Bd. of Trs. McKendree Coll.*, 210 Ill.App.3d 844, 849-50, 569 N.E.2d 252, 256 (5th Dist. 1991). Where a contract incorporates another document, by reference, its terms become part of the contract. *Lease Mgmt. Equip. Corp. v DFO P'ship*, 392 Ill.App.3d 678, 685, 910 N.E.2d 709, 715 (1st Dist. 2009). Here, the documented schedules to Minford Decl. Exs. A, C-E are part of the contracts.

Further, the validity of an assignment is determined by the intention of the parties, and that intention is to be derived by the instruments executed by them and from the surrounding circumstances. *Stilwell*, 555 F.3d. at 577-78; *Learning Curve Int'l, Inc. v Seyfarth Shaw LLP*, 392 Ill.App.3d 1068, 1074, 911 N.E.2d 1073, 1080 (1st Dist. 2009). No specific form of words is necessary for an effective assignment. *In re Mason*, 386 B.R. 715, 721 (Bankr. N.D.Ill. 2008); *Cincinnati Ins. Co. v Am Hardware Mfrs. Ass'n*, 387 Ill.App.3d 85, 100, 898 N.E.2d 216, 230 (1st Dist. 2008). Any document which sufficiently alleges the intent of the assignor to vest ownership of the subject matter of the assignment is sufficient to affect an assignment. *Cincinnati Ins. Co.*, 387

130269139v1 0926450

Ill.App.3d at 100 (citation omitted); *Stoller v Exch. Nat'l Bank of Chicago*, 199 Ill.App.3d 674, 681-82, 557 N.E.2d 438, 443 (1st Dist. 1990). The assignment must describe the subject matter with sufficient particularity to render it capable of identification. *Id* [citation omitted]; *Klehm v Grecian Chalet, Ltd.*, 164 Ill.App.3d 610, 616-17, 518 N.E.2d 187, 190-91 (1st Dist. 1987). Here, the documents attached to Handy's Aff't and Minford's Declaration are sufficient to show the intent of the assignors to vest ownership of the assignment's subject matter, and sufficient to show what was being transferred, namely Webb's Account XXXX-XXXX-XXXX-7406 or accounts as listed in identified schedules (Minford Decl. ¶¶ 5-12, Exhibits A, C-E). The intention of the parties and surrounding circumstances demonstrate the validity of the assignments. Webb's Account XXXX-XXXX-XXXX-7406 began with Citibank and ended up being owned by Midland Funding.

Minford's deposition testimony ("Minford Dep." attached as Exhibit A to Resp.) confirms that Midland Funding may invoke the arbitration agreement. Minford, a witness with knowledge (Minford Decl. ¶¶ 1-3), testified **[REDACTED]**. Minford Decl. Ex. B revealed Webb's specific information as to Account No. XXXX-XXXX-XXXX-7406. **[REDACTED]**.

Since these assignment and transfer documents are integrated into Midland Funding's records and relied upon by Midland Funding in conducting its business (Minford Decl. ¶ 3), these documents constitute admissible evidence as business records under Fed.R.Evid. 803(6). *United States v Adefehinti*, 510 F.3d 319, 326 (D.C.C. 2008); *United States v Irwin*, 656 F.3d 1151, 1161-62 (10th Cir. 2011); *United States v Childs*, 5 F.3d 1328 (9th Cir. 1993); *Miss. River Grain Elevator, Inc. v Bartlett & Co., Grain*, 659 F.2d 1314, 1318-19 (5th Cir. 1981); *Makor Issues & Rights, Ltd. v Tellabs, Inc.*, 735 F.Supp.2d 856, 867 n.2 (N.D.Ill. 2010); *Krawczyk v Centurion Capital Corp.*, 2009 WL 395458, at **4-5 (N.D.Ill. Feb. 18, 2009).

Thus, Webb's points and case law regarding lack of proof of assignment or ownership are either not relevant or simply wrong. The Handy Affidavit and Minford Declaration and their

**REDACTED**

respective exhibits, and Minford's deposition, establish ownership of Webb's debt and assignment of her Account to Midland Funding. Webb's cases (Resp. 5) are distinguishable. In *Starr v Hameroff Law Firm*, 2007 U.S. Dist. LEXIS 80923, at **5-7 (D.Az. Oct. 31, 2007), the defendants provided *no* evidence that they were agents or assigns of the original card issuer. The cases *Cohen v Wolpoff & Abramson, LLP*, 2008 U.S. Dist. LEXIS 77052, at **8-10 (D.N.J. Oct. 2, 2008); *Kamette v Wolpoff & Abramson, LLP*, 444 F.Supp.2d 640, 644-46 (E.D.Va. 2006) and *Bontempo v Wolpoff & Abramson, LLP*, 2006 U.S. Dist. LEXIS 78160, at **13-20 (W.D.Pa. Sept. 20, 2006) all involved completely different arbitration language, providing for arbitration with a third party only if the third party is named as a co-defendant in a claim against the issuer. *Nazar v Wolpoff & Abramson, LLP*, 2007 WL 2875377, at *1 (D. Kansas Oct. 3, 2007), addressed language ("you or we") completely different from the broad language of the Arbitration Agreement before this Court. Finally, in *Buford v Palisades Collection, LLC*, 552 F.Supp.2d 800, 809 (N.D. Ill. 2008), the defendants did not provide the court with the assignment or produce a contract between Palisades and the original creditor, AT&T. As Palisades was a debt collector, not a wireless service provider, AT&T's sale or assignment to Palisades appeared to be only partial, not having to do with service or usage, and it was not clear Palisades acquired all of AT&T's rights.

Webb wrongfully asserts a "break in the chain of title" and points to dates of certain data files (Resp. 6-7). Minford's Declaration Ex. D identifies a Receivables File which was sold and assigned. The fact that it is not attached does not "break the chain of title." A contract or assignment may have documents attached specifically describing what is being assigned. Any document that sufficiently alleges the intent of the assignor to vest ownership of the assignment's subject matter is sufficient to affect an assignment. *See* authorities cited above at 4-5. The originating creditor here, Citibank, identified Webb's specific Account No. XXXX-XXXX-XXXX-

7406 (Handy Aff't top of p. 1 ¶¶ 2, 4-8). Midland Funding's records also specifically identify Webb's Account No. XXXX-XXXX-XXXX-7406 (Minford Decl. ¶¶ 5-7, Exs. A, B).

Finally, the dates of documents referred to in Exhibits A and C to Minford's Declaration do not break the chain of title (Resp. 6-7). Exhibit A, the bill of sale to Midland Funding, refers to a computer file produced on June 8, 2010. Exhibit C (Transfer and Assignment) identifies a Receivable File dated June 10, 2010. Whatever inconsistency or significance Webb thinks she discerns between the date a data file is generated and the date of sale, the record facts and documents show Citibank selling Webb's Account No. XXXX-XXXX-XXXX-7406, the subsequent assignments of the Account between related entities, and finally the Account's sale to Midland Funding. Midland Funding incorporated Minford Decl. Ex. B (showing data on Webb's Account No. XXXX-XXXX-XXXX-7406).

The fact that certain assignments do not attach the Receivable File referred to therein (Minford Decl. Exs. C, D) does not assist Webb. These files are "not required by Illinois" (Resp. 7). As stated above, as long as the assignment specifically identifies the subject matter, it is a valid assignment. Webb cites *Unifund CCR Partners v Shah*, 407 Ill.App.3d 737, 744-45, 946 N.E.2d 858, 892 (1st Dist. 2011), which held as a matter of first impression, that to properly establish an assignment of an account under Section 8(b) of the Collection Agency Act, 225 ILCS 425/8b ("CAA"), the assignment contract must state the effective date of assignment, consideration given and the relevant identifying information for the account being assigned. This suit is not brought under the CAA. Importantly, both the beginning and end of the chain identify Webb's particular Account No. XXXX-XXXX-XXXX-7406 (Handy Aff't top of p. 1, ¶¶ 2, 4-8; Minford Decl. ¶¶ 5-6, Ex. B), and the intention of the parties and surrounding circumstances show a valid assignment. *Stillwell*, 555 F.3d at 577-78.

The plethora of cases Webb cites are distinguishable and provide little guidance (Resp. 7-8). Most of the cases involved inadequate, inconsistent or contradictory, unsigned or otherwise flawed documentation and/or breaks in the chain of title (*Nyankojo, Norfolk, Wirth, Palisades v Haque, Palisades v Gonzalez, Rushmore, Nat'l Check Bureau, Unifund v Laco, RAB Perf., DNS Equit. Group*). Some of the courts were concerned that the documentation did not demonstrate the debtor's account was sold to the assignee (*Hutto, Colorado Cap. Invest.* (also poor, inadequate chain of title evidence); *Cuda & Assoc.* (affidavit also possessed "serious marks of untrustworthiness" and no proof of contract with the original issuer/creditor); *MBNA* (also a question as to the actual terms of cardholder agreement); *Unifund v Herron* (also inconsistent names). The case *Assoc. Metals & Minerals Corp.* involved the different scenario of a statement a third party sent to a debtor indicating that the creditor was indebted to the third party, the court holding that the debtor's direction to the creditor to pay the third party did not effect an assignment. *Citibank (South Dakota) N.A. v Martin* generally discussed the proof of credit card agreements and assignments, without discussing any specific facts. In *Unifund CCR Partners v Cavendar* (Resp. Ex. E), the court found that the bill of sale and assignment did not sufficiently identify the accounts assigned to the plaintiff. In contrast, here we have foundational affidavits and consistent, signed chain of title documents which identify Webb's particular account and indebtedness, both at the beginning (Citibank) and end (Midland Funding) of the chain of title.

## C.  The Handy Affidavit, Minford Declaration, Hansen Deposition and Documents Establish Adequate Personal Knowledge and Evidence of the Assignments of Webb's Debt.

Contrary to Webb's bald conclusion, Minford's Decl. was not "false" but provided adequate foundation and admissible facts. (Resp. 9)  Minford clearly set forth his responsibilities (¶ 1), and the basis of his declaration, including records of others which have been incorporated into Midland Funding's records (¶¶ 2-3). Minford testified as to his review of records, confirming from the final

sale file provided in the transaction that Webb's information is exactly as it appears in Midland's business records as it was provided in the sale file. (Minford Dep. Ex. A to Resp. at 9-10). Exhibit B to Minford's Declaration is a portion of the file received in the transaction bearing data on Webb's Account No. XXXX-XXXX-XXXX-7406. (*Id* at 44, Minford Decl. ¶ 6) The various assignment documents were provided to Midland Funding at or around the time of the sale to Midland Funding (Minford dep. at 21-22, 28-30).

Webb's attempts to impeach foundation and chain of title fails on other grounds as well. Midland Funding provided foundation through Handy's Affidavit, which attested to the assignment and sale of Webb's Account No. XXXX-XXXX-XXXX-7406. Paula Hansen testified as to the data on the different computer screens she employs to validate data in affidavits or supply information for the affidavits. (Hansen Dep. Resp. Ex. F) Perhaps most importantly, the documents attached as Exhibits to Minford's Decl. were incorporated into Midland Funding's business records and are thus admissible evidence under Fed.R.Evid. 803(6). *See* authorities cited above at 5.

Webb's citation to certain deposition testimony of Minford and Hansen (Resp. 10-12) actually confirms the foundation, chain of title and ownership of Webb's Account. After testifying at length about the data file referenced in Ex. A to Minford's Declaration (Assignment of Accounts and Bill of Sale to Midland) Minford testified that he did not know the "specific individual" who created the data file (Minford Dep. 9-15). Such detailed knowledge is not necessary under Fed. R. Evid. 803(6). *Krawczyk*, 2009 WL 395458, at *5, *citing Thanongsinh v Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006), *United States v Keplinger*, 776 F.2d 678, 693-94 (7th Cir. 1985) and *United States v Duncan, Jr.*, 919 F.2d 981, 986 (5th Cir. 1990).

[REDACTED]. Again, such detail is not required. The Transfer and Assignment (Ex. C) was incorporated into Midland Funding's records and relied upon by Midland Funding. *See* cases cited above at 5; Minford Decl. ¶3, 9. The same reasoning applies to Minford's testimony regarding

**REDACTED**

130269139v1 0926450

the March 24, 2009 Receivable File referenced in Ex. D to Minford's Declaration (Declaration of Account Transfer and Ownership History between non-Midland Fund entities. (Resp. 10-11).

[REDACTED]. More importantly, in his Declaration Minford confirmed Webb's Account XXXX-XXXX-XXXX-7406 was among the accounts Midland Funding bought and received, and Handy attested that Webb's Account XXXX-XXXX-XXXX-7406 was sold (Minford Decl. ¶¶5-8; Handy Aff'd ¶8). Any doubtful answer to counsel's general question is thus irrelevant. Moreover, knowledge of such detailed knowledge is not necessary: the document (Ex. E) was incorporated into Midland Funding's business records. See cases cited at 5 above.

The same analysis applies to questions of references in Minford Declaration Ex. E to a March 30, 2009 Purchase and Sale Agreement, which memorializes the transaction attested to by Citibank's Handy (Handy Aff'd ¶8), and the fact the Sherman entities may have made efforts to collect on certain files (Resp. 11-12). The record facts are that Webb's Account was sold by Citibank and purchased by Midland. Webb has never asserted someone else tried to collect on the Account or that she paid any money to anyone to satisfy the debt on the Account.

Finally, [REDACTED].

Thus, the fact that Minford or Hansen did not know the answers to certain broad and irrelevant questions does not diminish the record evidence as to foundation, chain of title and Midland Funding's ownership of the Account. Webb is actually trying to turn back the clock and block admittance of any business records regularly relied upon, even though they are trustworthy.

Finally, contrary to Webb's assertion (Resp. 12) a document stating something is assigned "without recourse" does not mean it is worthless or that there was no assignment. *Worldwide Asset Purchasing, L.L.C. v Rent-A-Center East, Inc*, 290 S.W.3d 554 (Texas Ct. App. 2009), certainly does not hold this; the term "without recourse" is not even mentioned in the case. *Worldwide* addressed a sales agreement's "as-is" and "with all faults" language in connection with claims regarding the

**REDACTED**

130269139v1  0926450

number of unenforceable accounts. The court ruled there was no breach by the seller that it was sole owner of all right, title and interest in the subject portfolio. *Id.* at 562-64.

**D. Webb Incurred No Problems With Multiple Debt Buyers and Should Address Any Alleged Problems Regarding Debt Buyers To Congress and State Legislatures.**

More than one creditor suing the same person on the same debt is a serious concern. That is not what happened here, nor does Webb claim that it has. Webb does not claim that someone else owns the Account or that anyone tried to collect any money from her or reported the debt to the credit bureaus. Sound practices by and between sophisticated entities, including the maintenance of sufficient documentation and data, as occurred in this case, minimize the risk to consumers like Webb, who suffered no such inconvenience or double payment.

Webb's concerns should be addressed to Congress and the state legislatures. The debt industry is already regulated at the federal and state level with both federal and state authorities as well as private citizens able to bring suits. As to the case at bar, however, Webb agreed to arbitrate. Citibank's right to arbitrate and Webb's debt both were assigned to Midland Funding.

## III. CONCLUSION.

For the foregoing reasons, defendants respectfully submit that the Court grant their Amended Motion to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration.

Dated: January 31, 2012

David M. Schultz
Clifford E. Yuknis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
(312) 704-3000
Fax: (312) 704-3001

Respectfully submitted,

MIDLAND CREDIT MANAGEMENT, INC.,
MIDLAND FUNDING, LLC, and ENCORE
CAPITAL GROUP, INC., Defendants

By: */s/ Clifford E. Yuknis*
    One of Their Attorneys

11

130269139v1 0926450