## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BONNIE WEBB, )<br>on behalf of plaintiff and a class, )<br>                                    )<br>            Plaintiff, )<br>                                    )<br>    v.                              )<br>                                    )<br>MIDLAND CREDIT MANAGEMENT, )<br>INC.; MIDLAND FUNDING LLC; )<br>and ENCORE CAPITAL GROUP, INC., )<br>formerly MCM CAPITAL GROUP, INC., )<br>                                    )<br>            Defendants. ) | 11-cv-5111<br><br>Judge Joan H. Lefkow<br><br>Magistrate Judge Martin C. Ashman |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Plaintiff, Bonnie Webb ("Plaintiff"), by and through her attorneys, respectfully requests that this Honorable Court allow Plaintiff to respond to issues raised for the first time in Defendants' Reply in Support of Amended Motion to Compel Arbitration (Dkt. No. 50-1).

In support of this motion, Plaintiff states as follows:

1. Defendants raise for the first time in their reply the argument that the transfers and assignments, which they rely upon to assert that Plaintiff's claims are subject to an arbitration agreement, are admissible as business records under Fed.R.Evid. 803(6), under a theory that these are "incorporated records," which are admissible because "these...documents are integrated into Midland Funding's records and relied upon by Midland in conducting its business." (Def. Reply, p. 5)

2. The theory of "incorporated records" arose in the contexts of mortgage servicing and bank mergers, in which the owner of a loan or a successor bank "incorporated" records of its servicer or predecessor. *See Beal Bank, SSB v. Eurich*, 444 Mass. 813, 831 N.E.2d 909, 914 (Mass. 2005). However, *Beal Bank* and similar cases did not involve a situation where a debt buyer obtains minimal information concerning defaulted debts. They involved situations in which one entity acquires the records of another entity which pertain to accounts <u>not</u> in default, and made use of the

records in the ordinary course of its business. As a result, the information was subject to normal accounting, auditing, and examination procedures. In addition, the incorporating business was dealing with non-defaulted customers whose goodwill and business it wanted to preserve. These facts furnished circumstantial guarantees of reliability equivalent to those that exist when a business is offering records that it generated itself.

3. The testimony in this case does not support a claim of incorporation of records. (See Pat Minford Deposition attached as <u>Exhibit A</u> to Plaintiff's Response, Unredacted Version, Dkt. No. 47, 14:23-15:3; 23:24-24:6; 26:13-22; 27:5-10; 27:18-21; 28:1-4; 28:20-24; 29:2; 29:9-17)

4. Defendants' reliance on *Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 U.S. Dist. LEXIS 12204 (N.D. Ill. 2009) is misplaced. *Krawczyk* is not as broad as Defendants would have this Court believe. *Krawczyk* allowed a debt buyer, who had purchased a debt from the original creditor, to introduce the records of the <u>original</u> creditor, not merely someone's conclusions regarding those records, as Defendants attempt to do here.

5. Furthermore, *Krawczyk* goes too far. *Krawczyk* suggests that the fact that fraud by a debt buyer is punishable by penalty provides some assurance of reliability. However, that would also mean that affidavits or similar statements made under penalty of perjury could also be introduced as "integrated" records even though the records are not subject to regular use and examination in the ordinary course of business. This is not the law.

6. The comments of the Advisory Committee on the Federal Rules of Evidence, state that Fed.R.Evid. 803(6) is based on the premise that the reliability of business records is "supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Advisory Committee Notes, 1972 Proposed Rules, Note to Paragraph (6), Fed.R.Evid. 803. These guarantees do not exist when a company in the business of litigation pays 3.3 cents on the dollar for very poorly documented debts, files thousands of lawsuits, and nonsuits those lawsuits where the debtor appears and defends.

7.     Midland does not extend credit or have any normal relations with any debtors . It merely attempts to obtain money through lawsuits and threats of lawsuits. Midland "acquires ...portfolios at deep discounts from their face values". (Cmplt., ¶¶ 23-25)  A June 9, 2011 filing with the SEC (Form 8K, Exhibit 99.1) reflecting a presentation at an "Investor Day" by Brandon Black, President and Chief Executive Officer, Paul Grinberg, EVP and Chief Financial Officer, Amy Anuk vice president for Business Development and Manu Rikhye, Managing Director of India Operations, stated that Encore had invested $1.9 billion to acquire receivables with a face value of $58 billion since its inception, or about 3.3 cents on the dollar, and had acquired 34 million consumer accounts since its inception.  The same document states that in 2011 legal collections resulted in revenue of $266.8 million in 2010 and $88.5 million during the first quarter of 2011. During 2010, total collections by Encore amounted to $604.6 million (Form 10-K for year ending Dec, 31, 2010, original page 25), so that the "legal collections" were over 44% of the total.  The website of the Clerk of the Court of Cook County shows that Midland Funding filed 1,000 lawsuits between 12/21/11 and 1/20/12. (Available at: https://w3.courtlink.lexisnexis.com/cookcounty/FindDock.asp?NCase=&SearchType=2&Database=1&case_no=&Year=&div=&caseno=&PLtype=1&sname=midland+funding&CDate=).

8.     *Beal Bank* has not been so broadly interpreted by other courts. In *Provenzano v. Plymouth Rock Assurance Corp.*, 2006 Mass.App.Div. 155 (Sept. 28, 2006), the court held that "*Beal Bank* may not be read, however, to obviate the requirements of [the business-records statute] as to all records prepared or maintained in the course of business. As stated in *Beal Bank*, because it was the 'normal business practice [of the separate company] to maintain accurate business records regarding such loans and to provide them to those acquiring the loan,' it was not necessary for the bank to 'provide testimony from a witness with personal knowledge regarding the maintenance of the predecessors' business records.' In this case, however, Plymouth Rock did not have access to Scope's records on a daily basis, and Scope did not have the same business duty to maintain records accurately.  It follows, therefore, that Plymouth Rock should have introduced testimony from a

witness with personal knowledge of how the Scope records were kept. It would have been incumbent upon such a witness to demonstrate that each person in the chain of communication, from the observer to the record preparer, reported the information in question as a matter of business duty." (internal citations excluded).

        9.     Minford's unsupported conclusions are not evidence. A business records affidavit is intended to lay the foundation for documents, but here, the documents show nothing.

                                                    Respectfully submitted,

                                                    s/Cassandra P. Miller
                                                    Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

      I, Cassandra P. Miller, hereby certify that on February 8, 2012, a true and accurate copy of the foregoing document was sent to the following via email and US mail:

Clifford E. Yuknis  
David M. Schultz  
Hinshaw & Culbertson, LLP  
222 North LaSalle Street  
Suite 300  
Chicago, IL  60601-1081

                                                                   s/Cassandra P. Miller  
                                                                   Cassandra P. Miller