# APPENDIX A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE WEBB and ANGELA FULLER | ) | |
| f/k/a ANGELA GRUBBS | ) | |
| on behalf of plaintiffs and a class, | ) | |
| | ) | |
| Plaintiffs, | ) | 11-cv-5111 |
| | ) | |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC.; MIDLAND FUNDING LLC; | ) | Magistrate Judge Martin C. Ashman |
| and ENCORE CAPITAL GROUP, INC., | ) | |
| formerly MCM CAPITAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT – CLASS ACTION
## INTRODUCTION

1.      Plaintiffs Bonnie Webb and Angela Fuller, f/k/a Angela Grubbs bring this action to secure redress against unlawful collection practices engaged in by defendants Midland Credit Management, Inc. ("MCM"); Midland Funding LLC; and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. ("Encore"). Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 15 U.S.C. §1692k (FDCPA).

3.      Venue in this District is proper because defendants' collection communications to plaintiffs and numerous class members were received in this District.

1

## PARTIES

### Plaintiffs

4.     Plaintiff Bonnie Webb is a resident of the Northern District of Illinois.

5.     Plaintiff Angela Fuller is a resident of the Norther District of Illinois.

### Midland Funding

6.     Defendant Midland Funding LLC is a Delaware corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123. It does or transacts business in Illinois.

7.      Defendant Midland Funding LLC is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

8.     Defendant Midland Funding LLC then seeks to enforce the debts against the consumers through lawsuits.

9.     Most of the debts which defendants seek to collect are credit cards originally issued by banks. For example, during 2010, Encore purchased credit card receivables with a face value of $341,910,000 out of a total of $361,957,000 of all receivables, or more than 94% (Encore Capital Form 10-K filed with the Securities & Exchange Commission for year ending Dec. 31, 2010, original page 25).

10.      Defendant Midland Funding LLC has paid an average of less than 10 cents on the dollar for the debts it has purchased.

11.     Defendant Midland Funding LLC was the plaintiff in over 3,000 collection lawsuits pending in the Illinois courts during the year preceding the filing of this action. Between May 16, 2011 and July 7, 2011, a period of less than two months, Midland Funding LLC filed 1,000

2

collection lawsuits in Cook County alone.

12.     The mails and telephone system are used in connection with the prosecution of these Midland Funding LLC lawsuits.

13.     Defendant Midland Funding LLC is a "debt collector" as defined in the FDCPA.

## MCM

14.     Defendant MCM is a Kansas corporation with its principal place of business also located at 8875 Aero Drive, Suite 200, San Diego, CA 92123. MCM does business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

15.     Defendant MCM is a collection agency and collects the bad debts purchased by MRC.

16.     Defendant MCM holds a collection agency license from the state of Illinois.

17.     Defendant MCM uses the mails and telephone system to conduct its business.

18.     Defendant MCM is a "debt collector" as defined in the FDCPA.

## Encore

19.     MCM and Midland Funding LLC are under common ownership. Both are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

20.     Encore has stated in its filings with the Securities & Exchange Commission that "We are a leader in consumer debt buying and recovery. We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." Form 10-K filed by Encore with the SEC for year ending Dec.

31, 2010, original page 1.

21.    Encore (a) secures funds from investors and lenders for the purpose of purchasing the debts to which Midland Funding LLC takes title, (b) devises the collection strategies used by the other defendants, and (c) participated in the debt collection activities complained of.

22.    On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios." Form 8-K filed by Encore with the SEC on March 10, 2005.

23.    Encore is a "purchaser and manager of charged-off consumer receivables portfolios" – i.e., bad consumer debts. " Form 8-K filed by Encore with the SEC on March 3, 2005, including Exhibit 99.1 thereto.

24.    Encore "acquires these portfolios at deep discounts from their face values." A June 9, 2011 filing with the SEC (Form 8K, Exhibit 99.1) reflecting a presentation at an "Investor Day" by Brandon Black, President and Chief Executive Officer, Paul Grinberg, EVP and Chief Financial Officer, Amy Anuk vice president for Business Development and Manu Rikhye, Managing Director of India Operations, stated that Encore had invested $1.9 billion to acquire receivables with a face value of $58 billion since its inception, or about 3.3 cents on the dollar, and had acquired 34 million consumer accounts since its inception.

25.    The same document states that in 2011 legal collections resulted in revenue of $266.8 million in 2010 and $88.5 million during the first quarter of 2011.

26.    During 2010, total collections by Encore amounted to $604.6 million (Form 10-K for year ending Dec, 31, 2010, original page 25), so that the legal collections were over 44% of the total.

27.    Encore devises the "collection strategies" used by its subsidiaries. Form 10-K filed

by Encore with the SEC for the year ending December 31, 2010, original p. 6, states, under

"Collection Approach," that "We expand and build upon the insight developed during our purchase

process when developing our account collection strategies for portfolios we have acquired. Our

proprietary consumer-level collectability analysis is the primary determinant of whether an account

is actively serviced post-purchase. Throughout our ownership period, we periodically refine this

analysis to help determine the most effective collection strategy to pursue for each account."

28.     On Oct. 28, 2004, Encore CEO Gregory stated in an earnings conference call:

. . . Our board also elected Brandon Black, President and Chief Operating Officer
of the Company. Brandon has been Executive Vice President and Chief Operating
Officer for the past 5 years and has done a superb job. Brandon is the architect of
many of the analytical procedures and collection processes that distinguish Encore's
approach to the business. His intelligence, analytical ability and drive for success
have been instrumental in Encore's success and in his new role will be key factors
as we continue to build the business. . . .

On the purchasing front, we invested $21 million in new portfolios during the
quarter, up 10 percent from the prior year's quarters purchases of $19 million. Our
average purchase price for the quarter was 2.91 percent which was down slightly
from last year's 3.02 percent. This was not as much as we had hoped to invest but
appropriate given the high prices for much of the available supply.
Year-to-date, our purchases have been $57 million or about $7 million less than last
year's first 3 quarters. For the year-to-date, approximately 48 percent of our
purchases have been non-credit card, compared with just 6 percent last year for the
same period. We will have more to say about purchasing in a minute but the
purchasing discipline and analytical approach we've always taken are more important
now than ever before. . . .

29.     Encore is responsible for determining what debts to purchase and at what price. In

an earnings conference call conducted by executives of Encore on Aug. 3, 2004, Encore CEO

Gregory stated:

Encore enjoyed another good quarter. Our collections, revenue and net income all
increased. In addition, we closed a terrific new loan with J.P. Morgan Chase that
dramatically lowers our cost of borrowing, increases our flexibility, and should result
in better financial returns for Encore.

Finally, just after the end of the quarter, we closed the biggest purchase we've ever made on terms we considered quite attractive. We are very excited about our industry and its future, but most importantly, Encore's ability to excel in the future.

30.     On Aug. 3, 2004, Encore CEO Gregory stated in another such call:

We believe our business model is especially well-suited to this changing environment. Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.

The keystone to everything we do is customer-level analytics -- understanding the individual customer and his changing ability to pay. Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay. We are always asking the same question -- can this particular customer pay us all or some of what he owes now? By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off. In this process, a score is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.

The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectibility score of each customer. In other words, to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.

We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance transfer, external legal, and our recently developed agency outsourcing strategy.

31.     Because of its intimate involvement in collection activities, Encore is a debt collector as defined in the FDCPA.

## FACTS RELATING TO PLAINTIFF WEBB

32.     Defendants have been attempting to collect from plaintiff Webb an alleged credit card balance claimed to have been incurred for personal, family or household purposes and not for business purposes.

33.     Plaintiff Webb disputes the debt.

34.     On or about Sept. 21, 2010, defendant MCM sent plaintiff Webb a "pre-legal notification" attached as Exhibit A , demanding payment of $2,427.05 and stating that "we are considering forwarding this account to an attorney with the intent to initiate legal action to satisfy this debt", and "If we don't hear from you or receive payment by 10-21-2010, we may proceed with forwarding this account to an attorney."

35.     The "pre-legal notification" is a form document regularly used by defendant MCM.

36.     This letter was sent by MCM on behalf of Midland Funding LLC.

37.     On or about Feb. 17, 2011, defendant Midland Funding LLC, which claimed to own the debt, filed suit against plaintiff Webb to collect the alleged debt in the Circuit Court of Cook County. A copy of the complaint is attached as Exhibit B.

38.     The complaint sought only $2,203.16.

39.     Attached to the complaint was an "Affidavit of Paula Hansen in Support of Judgment" (Exhibit C) which claimed Midland's "business records pertaining to this account" show that "defendant(s) owed a balance of $2203.16."

40.     Plaintiff Webb retained counsel and defended the state court lawsuit.

41.     On June 23, 2011, Midland Funding LLC nonsuited the state court lawsuit.

## FACTS RELATING TO PLAINTIFF FULLER

42.     Defendants have been attempting to collect from plaintiff Fuller an alleged credit card balance claimed to have been incurred for personal, family or household purposes and not for business purposes.

43.     Plaintiff Fuller disputes the debt.

7

44.     On or about July 17, 2011, defendant MCM sent plaintiff Fuller a "Discount Offer" attached as <u>Exhibit D</u>, demanding payment of $7,201.63 and offering three payment options. The first plan offers to settle the debt a "40% off" discount, for $4,320.98, stating that plaintiff would receive a savings of "$2,880.65!" The second plan offers 12 monthly payments of $450.10 (totaling $5,401.2), stating that plaintiff Fuller would be receiving a "25% off" discount. The third plan offers 24 monthly payments of $270.06 (totaling $6,481.44), stating that plaintiff Fuller would be receiving a "10% off" discount. The letter further states that all three options "will save you money."

45.     The "Discount Offer" is a form document regularly used by defendant MCM.

46.     This letter was sent by MCM on behalf of Midland Funding LLC.

47.     On or about January 19, 2012, defendant Midland Funding LLC, which claimed to own the debt, filed suit against plaintiff Fuller to collect the alleged debt in the Circuit Court of Cook County. A copy of the complaint is attached as <u>Exhibit E</u>.

48.     The complaint sought only $4,905.47.

49.     Attached to the complaint was an "Affidavit of Paula Hansen in Support of Judgment" (<u>Exhibit F</u>) which claimed Midland's "business records pertaining to this account" show that "defendant(s) owed a balance of $4905.47."

50.     The Complaint and Affidavit state that the account was originally owed to Washington Mutual Bank.

51.     Plaintiff retained counsel and defended the state court lawsuit.

52.     On June 23, 2011, Midland Funding LLC nonsuited the state court lawsuit.

**FACTS – GENERAL**

8

53.     It is the policy and practice of defendants to send correspondence such as Exhibits A and D threatening legal action and falsely stating that consumers will save money by responding, to collect amounts greater than that which defendants actually intend to seek when they do take legal action.

54.     The "pre-legal notification" and "discount offer" letters inflate the amount of the claimed debt and then offers to negotiate from the inflated amount.

55.     On information and belief, based on the statements made by defendants to the public and in their SEC filings, defendants have a standardized policy and practice for determining the amount of the debt to claim in "pre-legal notifications" and "discount offers" such as Exhibits A and D.

56.     Because of the very large face amount of the receivables acquired by Encore and the very small percentage of face value paid for them, inflating the amount sought from the consumer by 10% or 20% in pre-litigation correspondence is highly beneficial to Encore. A 10% inflation of the total face value of Encore's receivables amounts to billions of dollars, and costs Encore nothing.

## COUNT I – FDCPA

57.     Plaintiffs incorporate paragraphs 1-56.

58.     Defendants engaged in both deceptive collection practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and unfair collection practices, in violation of 15 U.S.C. §§1692f and 1692f(1), by sending "pre-legal notifications" and "discount offers" that demand more money than defendants intend to sue for and/or have the right to sue for.

59.     Section 1692e provides:

9

**§ 1692e. False or misleading representations [Section 807 of P.L.]**
**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of–**

**(A) the character, amount, or legal status of any debt; . . .**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

60.     Section 1692f provides:

**§ 1692f. Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

## CLASS ALLEGATIONS

61.     Plaintiffs brings this action on behalf of a class, pursuant to Fed. R.Civ.P. 23(a)

and (b)(3).

62.     The class consists of (a) all natural persons with Illinois addresses who were sued by

any of the defendants (b) to whom any of the defendants previously sent a notice in the form

represented by Exhibit A or Exhibit D seeking an amount greater than that sued for (c) on or after

a date one year prior to the filing of this action, and (d) on or before a date 20 days after the filing

10

of this action.

63.     The class members are so numerous that joinder is impracticable.

64.     On information and belief, a notice in the form represented by Exhibits A or D is sent to each person against whom suit is filed in the name of Midland Funding LLC in an Illinois court.

65.     There are over 1,000 such persons during the year prior to the filing of this lawsuit.

66.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A and D violate the FDCPA.

67.     Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

68.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

69.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible, and in any event are not sufficient to prevent defendants from continuing their violations of the law. Many debtors may not realize that their rights are violated.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and the class members and against defendants for:

> (1) Statutory damages;
>
> (2) Attorney's fees, litigation expenses and costs of suit;
>
> (3) Such other or further relief as the Court deems proper.

11

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

13

# EXHIBIT A

Dept. 12421
PO Box 603
Oaks, PA 19456



**MCM Account Number**

...2716

**Original Creditor**

CITIBANK

**CURRENT BALANCE**

$2,427.05

10-21-2010

mcm **Midland Credit Management, Inc.**

09-21-2010

#BWNHLTH
#0000 0853 4942 7162#
BONNIE WEBB

16321 - 9214



---

## PRE-LEGAL NOTIFICATION

Dear BONNIE WEBB,

Midland Credit Management, Inc. has made several attempts to contact you regarding this account. This letter is to inform you that we are considering forwarding this account to an attorney with the intent to initiate legal action to satisfy the debt. Upon receipt of this notice, please call immediately to discuss your options.

If we don't hear from you or receive payment by 10-21-2010, we may proceed with forwarding this account to an attorney.

**What do you need to do to stop this process from continuing?**

1) Mail in $500 and call to set up your remaining payments, or
2) Call us today to see how to qualify for discounts and affordable payment plans.

**LET US HELP YOU!** Once the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us today:
**(800) 939-2353**

Midland Credit Management
(800) 939-2353

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND ADDITIONAL DETAILS ABOUT YOUR ACCOUNT.

* Your credit report will not be updated if the federal reporting period has expired.

### WHY NOW?

- This may be your last chance to work with us before the account goes to an attorney.

- Your credit report will be updated with the payments made!*

- Once you make all of your agreed-upon payment(s) to settle your account, your credit report will be updated as 'Paid in Full'!*

**CALL US TODAY!**
**(800) 939-2353**

Hours of Operation:
M-Th 6am - 7pm;
Fri 6am - 5pm;
Sat 6am - 2:30pm PST

*Please tear off and return lower portion with payment in the envelope provided*

---

**PAYMENT COUPON**

**mcm**
PO Box 603
Oaks, PA 19456

| STATEMENT | |
|---|---|
| MCM Account #: ⬛2716 | Previous Balance:<br>$2,203.16 |
| Original Account #: ⬛7406 | Interest Rate:<br>5.00% |
| Statement Date: 09-21-2010    Due Date: 10-21-2010 | Accrued Interest:<br>$223.89 |
| Current Owner: Midland Funding LLC    Original Creditor: CITIBANK | Current Balance:<br>$2,427.05 |

| Due Date | Date Received | Transactions | Amount |
|---|---|---|---|
| 10-21-2010 | 09-21-2010 | The above-referenced account was purchased by Midland Funding LLC and is serviced by Midland Credit Management, Inc. ("MCM"). The balance of $2,427.05 is due now.<br><br>Please direct all correspondence to: Midland Credit Management, Inc. | $2,427.05 |
| | | | Current Balance:<br>$2,427.05 |

Please understand this communication is from a debt collector.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

# EXHIBIT B

2606217

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT, COOK COUNTY

MIDLAND FUNDING LLC
           Plaintiff

vs.

BONNIE WEBB

           Defendant(s)

Case No:

Amount Claimed: $2203.16 + costs

Return Date:   03-24-11

**11M1 112387**

2011 FEB 17 AM 9: 41
DOROTHY BROWN
CLERK

## COMPLAINT

The Plaintiff, MIDLAND FUNDING LLC, claims as follows:

1.   The Defendant(s) BONNIE WEBB
    is/are a resident of COOK County, Illinois.

2.   The Defendant(s) opened a charge account with CITIBANK
    agreeing to make monthly payments as required by the terms of the Charge Agreement, for the purchases charged to the account.

3.   Plaintiff is the successor in interest of said account from CITIBANK
    having purchased said account in the regular course of business in good faith and for value.

4.   The Defendant(s) did make purchases and charged same to the account but failed to make the monthly called for on the account. There is a balance due and owing $2203.16.
    payments (See Client affidavit as Plaintiff's Exhibit No. 1.)

5.   Plaintiff declared Defendant(s) to be in default and demands payment of balance.

**WHEREFORE,** the Plaintiff, MIDLAND FUNDING LLC, prays for judgment against the Defendant(s), BONNIE WEBB   , in the amount of $2203.16 plus costs.

Blatt, Hasenmiller, Leibsker & Moore, LLC - 01237
125 South Wacker Drive, Suite 400
Chicago, IL 60606
(866) 269-9858

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR

BLCCP (02/2003)



# EXHIBIT C

State of ILLINOIS

MIDLAND FUNDING LLC,

Plaintiff

-vs-

WEBB, BONNIE,

Defendant(s).

AFFIDAVIT OF PAULA HANSEN
IN SUPPORT OF JUDGMENT

---

Paula Hansen, whose business address is 16 Mcleland Rd Suite101, St. Cloud, MN 56303, certifies and says:

1. I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CITIBANK account 5121079713267406 (MCM Number 8534942716) (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf.

2. I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account. The records are kept in the regular course of business. It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record. In the regular course of business, the record or compilation is made at or near the time of the act or event. The relevant financial information concerning the account includes the following:

3. The account shows that the defendant(s) owed a balance of $2203.16.

---

AFFIDAVIT OF PAULA HANSEN IN SUPPORT OF JUDGMENT -1





4.   Based upon my review of MCM's business records: 1) defendant(s) opened the account with CITIBANK on 2003-03-08; 2) the last payment posted to the account on 2008-05-21; and 3) the account was charged off on 2008-09-07.

5.   If called to testify as a witness thereon, I could and would competently testify as to all the facts stated herein.

I certify under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

JAN 1 0 2011
_____
Date

_____
Paula Hansen

STATE OF MINNESOTA

COUNTY OF STEARNS

JAN 1 0 2011

Signed and sworn to (or affirmed) before me on _____ by Paula Hansen.

_____
(Seal)                        Notary Public

My commission expires:_____

SHANNON MARIE MCCLELLAN
Notary Public-Minnesota
My Commisssion Expires Jan.31, 2015

IL21
BLATT, HASENMILLER, LEIBSKER & MOORE

_____

AFFIDAVIT OF PAULA HANSEN IN SUPPORT OF JUDGMENT -2





833494271G                          AFFDEFAULTJDG                          2606217

EXHIBIT D



Return Mail Only - No Correspondence
Dept. 12421
PO Box 603
Oaks, PA 19456

**40% Discount Offer**

| | |
|---|---|
| **MCM Account Number** | |
| | 5430 |
| **Original Creditor** | |
| **WASHINGTON MUTUAL BANK** | |
| **CURRENT BALANCE** | |
| | **$7,201.63** |
| **PAYMENT DUE DATE** | |
| | **08-31-2011** |

07-17-2011

#BWNHLTH
#0000          4308#          18078-274
ANGELA GRUBBS



Dear ANGELA GRUBBS,

Midland Funding LLC has purchased your WASHINGTON MUTUAL BANK account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the new servicer of this obligation.

We are offering you THREE payment options. All will save you money. All will make it easier to resolve this account.

■ No additional interest will be charged to your account

■ All collection calls and letters on this account will stop

■ You will get rid of this debt and get on with your life

■ We will notify the credit bureaus the debt is PAID IN FULL

### PLAN 1: Settle in Full

Discount: 40% off
Payment Amount: $4,320.98
Save: $2,880.65!

### PLAN 2: Monthly Payments

Discount: 25% off
Monthly Payment Amount: $450.10
# of months: 12

### PLAN 3: Monthly Payments

Discount: 10% off
Monthly Payment Amount: $270.06
# of months: 24

Simply mail the Payment Coupon below along with your payment in the envelope provided. Please mail your payment by 08-24-2011 to be sure it reaches us by the due date of this offer, 08-31-2011.

Hours of Operation:
Sat-Th 5am - 2pm PST;

If you aren't able to take advantage of these offers, please call an Account Manager at (877) 299-3686. We may have other options to help you resolve this account.

Sincerely,

Midland Credit Management, Inc.
(877) 299-3686

**NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

EXHIBIT E

2697318

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
MCLEAN COUNTY, ILLINOIS

MIDLAND FUNDING LLC
          Plaintiff,

    vs.

ANGELA GRUBBS

          Defendant(s)

Case No.: 12 SC 147

## COMPLAINT

1. **NOW COMES** Plaintiff and states as follows:

2. The Defendant is a resident of MCLEAN County, Illinois.

3. The Defendant opened a charge account with WASHINGTON MUTUAL promising to make monthly payments for purchases charged to the account.

4. The Plaintiff did take an assignment of said Charge Account in good faith, for value, and in the regular course of business.

5. The Defendant did make purchases and charged same to the account, and there is a balance due and owing $4905.47. (See Client affidavit as Plaintiff's Exhibit 1)

6. The Defendant has failed to make the monthly payments due on the account, whereupon the Plaintiff declared the Defendant to be in default and demands payment of the balance.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant in the amount of $4905.47 plus costs.

FILED
McLEAN COUNTY
JAN 1 9 2012
CIRCUIT CLERK

Respectfully submitted,
MIDLAND FUNDING LLC

Attorney for Plaintiff

Blatt, Hasenmiller, Leibsker & Moore, LLC
Attorneys for Plaintiff
211 Landmark Drive, Suite C-1
Normal, Illinois 61761-6165
(866) 269-9858
2697318

Adolfo Brandon Sanchez
ARDC # 6295409

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR**

NDB0

<u>EXHIBIT F</u>

State of ILLINOIS

MIDLAND FUNDING LLC,

Plaintiff

-vs-

GRUBBS, ANGELA,

Defendant(s).

AFFIDAVIT OF PAULA HANSEN
IN SUPPORT OF JUDGMENT

_____

     Paula Hansen, whose business address is 16 Mcleland Road Suite 101, St. Cloud, MN 56303, certifies and says:

1.    I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's WASHINGTON MUTUAL BANK account ██████7140 (MCM Number ██████5430) (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf.

2.    I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account. The records are kept in the regular course of business. It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record. In the regular course of business, the record or compilation is made at or near the time of the act or event. The relevant financial information concerning the account includes the following:

3.    The account shows that the defendant(s) owed a balance of $4905.47.

EXHIBIT 1
_____
AFFIDAVIT OF PAULA HANSEN IN SUPPORT OF JUDGMENT -1

8540115430                AFFDEFAULTJDG            2697318

4.   Based upon my review of MCM's business records: 1) defendant(s) opened the account with WASHINGTON MUTUAL BANK on 2002-01-08; 2) the last payment posted to the account on 2007-09-12; and 3) the account was charged off on 2008-04-30.

5.   If called to testify as a witness thereon, I could and would competently testify as to all the facts stated herein.

I certify under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

DEC 0 1 2011
_____
Date

_____
Paula Hansen

STATE OF MINNESOTA

COUNTY OF STEARNS

Signed and sworn to (or affirmed) before me on   DEC 0 1 2011   _____ by Paula Hansen.

(Seal)


Francine M. Semmler
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2015

_____
Notary Public

My commission expires: _____

IL21
BLATT, HASENMILLER, LEIBSKER & MOORE

AFFIDAVIT OF PAULA HANSEN IN SUPPORT OF JUDGMENT -2

EXHIBIT 1

8540115430

AFFDEFAULTJDG