IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE WEBB and ANGELA FULLER, on behalf of themselves and others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) No. 11 C 5111 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING LLC, and ENCORE CAPITAL GROUP, INC. formerly known as MCM CAPITAL GROUP, INC. | )<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiffs Bonnie Webb and Angela Fuller filed a putative class action against defendants Midland Credit Management, Inc. ("Midland Credit"), Midland Funding LLC ("Midland Funding") and Encore Capital Group, Inc. ("Encore") (collectively "defendants"), alleging that defendants engaged in deceptive and unfair collection practices under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, by sending plaintiffs pre-legal notifications and discount offers demanding inflated payments to satisfy past-due debts. Defendants have moved to compel arbitration and stay proceedings pending the completion of arbitration as to plaintiff Webb. [Dkts. #34 & #67.]¹ Defendants' motion will be denied.²

---

¹ Defendants filed a motion to compel arbitration, Dkt. #28, and then filed an amended motion to compel arbitration. [Dkt. #34.] Thereafter, plaintiff Webb filed a first amended complaint adding Fuller as a plaintiff. [Dkt. #71.] Defendants renewed their motion to compel as to plaintiff Webb [Dkt. #67], incorporating their amended motion and citing additional authority, to which Webb responded. [Dkt. #70.] The court has considered this authority in ruling on the motion.

² The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 1692k(d).
(continued...)

**BACKGROUND**

Defendants are in the debt collection business and have been attempting to collect an outstanding credit card debt from Webb. The present dispute centers on whether Midland Funding, as the purported assignee of all right, title and interest in Webb's credit card debt, may enforce the arbitration provision contained in Webb's credit card agreement (the "card agreement"). (*See* Defs.' Mot. to Compel Ex. 1.)[3] According to defendants, Webb incurred a debt on a credit card serviced by Citibank, N.A. ("Citibank"), and subsequently the debt was assigned multiple times to various debt collection entities before coming to rest in the possession of Midland Funding. These assignments, state defendants, were as follows:

(1) From Citibank to Sherman Originator III LLC ("Sherman Originator III");
(2) From Sherman Originator III to Sherman Originator LLC ("Sherman Originator");
(3) From Sherman Originator to LVNV Funding LLC ("LVNV");

---

(...continued)
Venue is proper under 28 U.S.C. § 1391(b)(2) because defendants' collection communications to plaintiffs were received in this district.

[3] This provision states in part:

Agreement to Arbitrate
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

Claims Covered
What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.

\*\*\*

Whose Claims are subject to arbitration?
Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as . . . an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee or trustee in bankruptcy.

(Defs.' Mot. to Compel Ex. 1, Card Agreement at 10–11.)

(4) From LVNV to Sherman Acquisition, LLC ("Sherman Acquisition"); and
(5) From Sherman Acquisition to Midland Funding.

(*See* Minford Decl. ¶¶ 5–12.)

Defendants argue that Midland Funding, as an assignee, stands in the shoes of Citibank, the original assignor, and may enforce the arbitration provision contained in the card agreement.[4] In support of each of the aforementioned assignments, defendants submit the following evidence:

> (1) The affidavit of Lana Handy, an employee of Citicorp Credit Services, Inc. ("CCSI"), a subsidiary of Citibank that services credit card accounts for Citibank. (Handy Aff. ¶ 1.)[5] Handy states that Citibank's records indicate that Webb's account was sold to Sherman Originator III on or about March 30, 2009, and that Citibank retained no ownership interest in the account. (*Id*. ¶ 8.) Attached to Handy's affidavit is an account summary for Webb's account and the card agreement. Defendants also submit the declaration of Pat Minford, Senior Manager of Business Development Process for Midland Credit, who, based on his personal knowledge and review of the business records of Midland Funding and Midland Credit, states that Citibank South Dakota, N.A. ("Citibank South Dakota")[6] assigned its interest in Webb's account to Sherman Originator III. (Minford Decl. ¶¶ 2, 12.)[7] In support, Minford relies on a bill of sale executed by the two companies and dated March 30, 2009, which is attached as Exhibit E. (*See* Minford Decl. Ex. E.) Also attached are billing statements for Webb's account. (*Id.* Ex. F.)
>
> (2) The declaration of Minford, who states that Sherman Originator acquired Webb's account from Sherman Originator III, relying on an undated "Declaration Account Transfer and Ownership History" executed by the two companies and LVNV and attached as Exhibit D. (Minford Decl. ¶ 11 & Ex. D.)

---

[4] All defendants are related entities. Midland Funding and Midland Credit are subsidiaries of Encore, and Midland Funding is the indirect subsidiary of Midland Credit. (Am. Compl. ¶ 19; Minford Decl. ¶ 1.) Midland Credit is the servicer and authorized agent for Midland Funding and manages the debt purchased by Midland Funding. (Minford Decl. ¶ 1.)

[5] Handy's affidavit is Exhibit 1 to defendants' motion to compel.

[6] Citibank South Dakota merged with Citibank in July 2011. (Handy Aff. ¶ 1.)

[7] Minford's declaration is Exhibit 2 to defendants' motion to compel.

(3) The declaration of Minford, who states that LVNV acquired Webb's account from Sherman Originator relying on Exhibit D. (Minford Decl. ¶ 10 & Ex. D.)

(4) The declaration of Minford, who states that Sherman Acquisition acquired Webb's account from LVNV, relying on an undated "Transfer and Assignment" executed by the two companies and attached as Exhibit C. (Minford Decl. ¶ 9 & Ex. C.)

(5) The declaration of Minford, who states that Sherman Acquisition assigned all right, title and interest in Webb's account to Midland Funding, relying on a bill of sale dated June 10, 2010, executed by the director of Sherman Acquisition, and attached as Exhibit A. (Minford Decl. ¶ 8 & Ex. A.) Also attached is Exhibit B, which is a print out from the electronic records provided by Sherman Acquisition identifying Webb's account as one of those sold pursuant to the June 10, 2010 bill of sale.

Webb argues that the aforementioned evidence is insufficient to demonstrate that a valid agreement to arbitrate exists between Webb and Midland Funding, the purported assignee of her debt, because defendants' affiants have no personal knowledge of the assignment, rendering defendants' evidence inadmissible hearsay.

**LEGAL STANDARD**

The FAA governs questions of arbitrability in both state and federal courts. *See Jain* v. *de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "To determine whether a contract's arbitration clause applies to a given dispute, federal

courts apply state-law principles of contract formation." *Gore* v. *Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

Motions to compel arbitration are reviewed under a summary judgment standard as set forth in Federal Rule of Civil Procedure 56(c), *Tickanen* v. *Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006), and the movants must "provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law." *WFC Commodities Corp.* v. *Linnco Futures Grp., Inc.*, No. 98 C 1354, 1998 WL 834374, at *2 (N.D. Ill. Nov. 25, 1998) (internal quotation marks and citation omitted). "Because a motion to compel arbitration is treated as an assertion that the court lacks subject-matter jurisdiction, the court may consider exhibits and affidavits related to the issue of arbitration agreements." *McGinnis* v. *John C. Bonewicz, P.C.*, No. 11-CV-2210, 2012 WL 604430, at *2 (C.D. Ill. Feb. 2, 2012). "The court must consider the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party." *Tickanen*, 461 F. Supp. 2d at 866.

## ANALYSIS

To demonstrate that Webb's debt was properly assigned to Midland Funding, defendants primarily rely on Minford's declaration and the exhibits attached thereto. Although these exhibits are hearsay, they may be admissible under Federal Rule of Evidence 803(6), which exempts records of regularly conducted activity from the hearsay rule, provided that defendants can establish that

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

5

  (C) making the record was a regular practice of that activity;
  (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
  (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6); *see Datamatic Servs., Inc.* v. *United States*, 909 F.2d 1029, 1032 (7th Cir. 1990). "The idea behind Rule 803(6) is that when a record is kept with sufficient regularity, the existence of an entry (or the absence of one) is good evidence that the thing in question took place (or did not take place)." *United States* v. *Ramsey*, 785 F.2d 184, 192 (7th Cir. 1986). Thus, business records are reliable to the extent that they are compiled consistently and conscientiously. *Id.*

  Pursuant to subsection (D), Rule 902(11) requires that the purported business record be authenticated by the testimony or declaration of a "custodian or other qualified person." Fed. R. Evid. 902(11). To lay the proper foundation, a proponent must "'demonstrate[] through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records.'" *United States* v. *Reese*, 666 F.3d 1007, 1017 (7th Cir. 2012) (quoting *United States* v. *Given*, 164 F.3d 389, 394 (7th Cir. 1999)). "A qualified witness need not be the author of the document but must have personal knowledge of the procedure used to create and maintain the document." *Id.* The decision to admit a document under the business records exception is entrusted to the broad discretion of the trial court. *Datamatic Servs., Inc.*, 909 F.2d at 1032.

  In support of their position that Webb's debt was properly assigned to Midland Funding, defendants rely on the declaration of Minford, who states that he is familiar with Midland Credit's record keeping systems and that his testimony is based on his personal knowledge or

upon his review of the business records of Midland Funding and Midland Credit, which were made by or from information transmitted by a person with knowledge of the events described therein, at or near the time of the event described, and were kept in the ordinary course of the regularly conducted business activity of such person and Midland Credit and for which it is the regular practice of that business activity to make such records. (Minford Decl. ¶ 2.) This foundation would be sufficient if the business records at issue were created by Midland Credit. Exhibits A through F, upon which Minford relies, however, do not appear to have been made and kept by defendants in the course of their regularly conducted business activity. (*See* Minford Decl. Exs. A–F.) Rather, these exhibits are signed by third party entities, and two of the documents (Exhibits C and D) are undated, calling into question when exactly they were made.

Minford admits that some of the business records he reviewed "were created by businesses other than Midland Credit," but defendants argue that these third party records are admissible under Rule 803(6) because they have been "incorporated into the business records of Midland Credit and relied upon by Midland Credit in conducting its business." (Minford Decl. ¶ 3.) Indeed, some courts in this circuit have recognized that "a third party document may qualify as another business entity's record, provided that the entity integrated the third-party document into its records and relied upon it in its day-to-day operations." *Cunningham Charter Corp.* v. *Learjet, Inc.*, No. 07-CV-233-DRH-DGW, 2012 WL 1565532, at *3 (S.D. Ill. May 2, 2012); *accord Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 735 F. Supp. 856, 867 n.2 (N.D. Ill. 2010); *BP Amoco Chem. Corp.* v. *Flint Hill Res., LLC*, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010); *see also Krawczyk* v. *Centurion Cap. Corp.*, No. 06-C-6273, 2009 WL 395458, at *5 (N.D. Ill. Feb.

7

18, 2009) (admitting evidence of assignment of debt under Rule 803(6) where collection agency integrated assignor's records into its own and relied on them in conducting its daily operations).

The Seventh Circuit has not directly addressed this issue, but courts applying this approach have held that the proponent of such records must do more than assert that it relied on the third party record in conducting its day-to-day business activities. Rather, "the proponent of the document must demonstrate that the other requirements of Rule 803(6) are satisfied." *Cunningham Charter Corp.*, 2012 WL 1565532, at *3; *see also Datamatic Servs., Inc.*, 909 F.2d at 1033 ("if the source of the information [contained in the business record] is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record" (internal quotation marks and citation omitted)); *United States* v. *Borrasi*, 639 F.3d 774, 780 (7th Cir. 2011) ("courts may not permit the introduction of hearsay contained within hearsay unless *each* layer is properly admitted under an exception to Rule 802" (citing Fed. R. Evid. 805)); 2 Kenneth S. Broun, *McCormick on Evidence* § 290 (6th ed.) ("The common law exception for regularly kept records required that . . . [t]he entrant . . . be acting in the regular course of business, and if the information was supplied by another, that person also was required to be acting in the regular course of business.").

Thus, to admit the third party documents attached as Exhibits A through F to Minford's declaration as business records, defendants must demonstrate that the third party author created such documents on a regular basis and kept the document at issue in the course of its regularly conducted business activity. *See Cunningham Charter Corp.*, 2012 WL 1565532, at *3. Defendants must satisfy these foundational requirements through the testimony of a qualified

8

witness with knowledge of the process by which the third party created the document, thereby demonstrating that the document is trustworthy. *See id.*

A review of Minford's declaration demonstrates that defendants have failed to lay the requisite foundation for admission of Exhibits A through F. Minford does not claim to be knowledgeable in the record keeping procedures of any of the non-defendant entities. Moreover, when asked at his deposition whether he had any information about what records Sherman Originator and LVNV maintain and how Sherman Acquisition keeps its records, Minford responded no or that he did not know. (*See* Minford Dep. 21:11–18; 31:1–25.) Thus, by his own admission, Minford is not qualified to testify as to the process by which Sherman Originator, LVNV, and Sherman Acquisition created and maintained Exhibits A through D. As to Exhibits E and F, which include a bill of sale signed by representatives of Sherman Originator III and Citibank South Dakota and credit card statements issued by Sears, Minford does not claim to be knowledgeable in the record keeping procedures of either Sherman Originator III or Citibank and admitted under oath that he did not know anything about Citibank's computer system. (*Id.* 32:13–15.) Based on this record, it is clear that Minford lacks personal knowledge of the procedure used to create and maintain Exhibits A through F, and he is not capable of testifying as a qualified witness under Rule 902(11). *See Reese*, 666 F.3d at 1017. The court therefore declines to admit Exhibits A through F as records of regularly conducted business activity, and will not consider them in ruling on defendants' motion.[8]

---

[8] A cursory review of the literature demonstrates that the possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real. *See, e.g.,* Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases*, 6 J. BUS. & TECH. L. 259 (2011); Rick Jurgens & Robert
(continued...)

Without Exhibits A through F, defendants cannot show an unbroken chain of assignment entitling them to stand in Citibank's shoes and enforce the arbitration provision contained in Webb's credit card agreement. All that is evident from the record is that Citibank sold Webb's account to Sherman Originator III on or about March 30, 2009, and that at the time of the sale, Citibank's records indicated that Webb owed an outstanding balance. (Handy Aff. ¶¶ 6, 8.)[9] Defendants motion to compel arbitration must be denied.[10]

## ORDER

---

(...continued)
J. Hobbes, *The Debt Machine: How the Collection Industry Hounds Consumers and Overwhelms Courts*, THE NAT'L CONSUMER LAW CTR.(July 2010), http://www.nclc.org/images/pdf/pr-reports/debt-machine.pdf; FED. TRADE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION (2010), http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf.

[9] Even if the court were to consider the Minford exhibits, defendants would still have a difficult time demonstrating an unbroken chain of assignment because none of the receivable files referenced in the exhibits are part of the record. Although a contract may incorporate all or part of another instrument by reference, *see Unifund CCR Partners* v. *Shah*, 946 N.E.2d 885, 891, 407 Ill. App. 3d 737, 349 Ill. Dec. 389 (2011), without knowing the content of each receivable file, the court cannot discern whether Webb's account was one of those incorporated into the contract. Moreover, just because Webb's account number was identified as sold at the beginning and end of the chain of assignment does not mean that the chain is unbroken. To effectuate a valid assignment, the assignor must have an assignable right. Restatement (Second) of Contracts § 324, Comment A (1981). Without knowing the content of the receivable files, it is unclear what interest (if any) Sherman Originator III, Sherman Originator, and LVNV had in Webb's debt. It is therefore possible that Webb's debt was not assigned to any one of these entities, making it impossible for one entity to assign it to the next.

[10] The exhibits attached to Handy's affidavit qualify as business records because they were kept by CCSI on behalf of Citibank in the regular course of business; it was the regular course of business of Citibank and/or CCSI for an employee or representative with personal knowledge of the act, event, condition, or opinion recorded to make memorandum or records or to transmit information thereof to be included in such memorandum or records; and the records were made at or near the time of the act and/or event recorded or reasonably soon thereafter. (Handy Aff. ¶¶ 1– 2.) Handy is a qualified witness under Rule 902(11) because she is an employee of CCSI, which maintains and records information in Citibank's records relating to credit cards owned by Citibank, and she appears to have knowledge of the process by which Citibank maintains its records. (*See id.* ¶¶ 2–4.)

For the foregoing reasons, defendants' motion to compel arbitration and stay proceedings pending completion of arbitration as to plaintiff Webb [#34] is denied.

ENTER:

Dated: May 31, 2012

_____
JOAN HUMPHREY LEFKOW
United States District Judge